H. Y. BARRETT, Appellant, v. DES MOINES MUTUAL HAIL
AND CYCLONE INSURANCE ASSOCIATION.

Insurance: SETTLEMENT OF ASSESSMENT: FORFEITURE: WAIVER.
1    An agent of a mutual hail association, authorized simply to
collect delinquent assessments, settled with a suspended mem-
ber by allowing him a claimed loss in part payment and
accepting his note for the balance, the proceeds of which he
remitted the company, with full information as to the settle-
ment. The company notified the assured that the claimed
loss could not be allowed but retained the proceeds of the
note, and subsequently notified him that an assessment for
another year was due. *Held*, that the company by its con-
duct had ratified the act of the agent, which restored the
assured to membership, and had thereby waived its right to
claim a forfeiture of the policy.

Pleadings: INSUFFICIENCY OF ALLEGATION: FAILURE TO OBJECT:
2    WAIVER. In an action on an assessment policy of insurance,
the insufficiency of a general allegation that defendant has
waived the suspension of a member, though a legal conclusion,
is waived by failure to properly object thereto.

*Appeal from Plymouth District Court.*—HON. F. R. GAY-
NOR, Judge.

SATURDAY, APRIL 11, 1903.

ACTION to recover a loss under a policy in a mutual
hail insurance company. Defense, that at the time of the
loss plaintiff was under suspension from the company on
account of failure to pay assessments. Trial without a
jury. Judgment for defendant, from which plaintiff
appeals.—*Reversed.*

*Edwin J. Stason* for appellant.

*Carr & Parker* for appellee.

McCLAIN, J.—The trial was upon a written stipulation
as to the facts. The substantial facts, as they appear from

the stipulation, are as follows: The plaintiff became a member of the defendant company in June, 1899, under an agreement for insurance of his crops against hail to the extent of $1,000, for a period of five years. In August of that year an assessment on the members was made, the amount of the assessment against plaintiff being $38, which amount was payable by plaintiff on the 1st of October of that year. Failing to make payments, plaintiff was duly notified of his suspension from the company on that account, in accordance with the provisions of its articles and by-laws. This suspension continued until the 10th day of August, 1900, when one Miller, who was employed by the defendant company only for the purpose of collecting delinquent assessments, called upon the plaintiff to secure payment of the amount due from him. Plaintiff then claimed that he had a loss to his crops from the hail in 1899 to the amount of $18, which had not been paid, and Miller on that date accepted plaintiff's negotiable note for $20, with the agreement that plaintiff should be allowed the amount of his claimed loss. Miller negotiated the note, and reported the settlement with plaintiff to the defendant company on the 13th of August, delivering to defendant the proceeds of the note. The president of the company thereupon wrote to plaintiff that the company was not liable to him for the $18 loss, and that the claim therefor could not be allowed. It is conceded that Miller had no authority to adjust losses, and that no notice of the $18 loss had been given to the defendant within the time and in the manner required by the contract of insurance, but the defendant company accepted from Miller the proceeds of the $20 note with full information as to the adjustment which Miller had made with plaintiff, and has since retained the amount of such proceeds. On the 12th of August—that is, between the date of the transaction between Miller and plaintiff and the time when Miller reported the adjustment and collection to defendant—

plaintiff suffered a loss by hail to the full amount of his insurance, and that, so far as the record now shows, such amount is due by defendant to plaintiff, if plaintiff was at the time of the loss not under suspension for nonpayment of the assessment of 1899.

If the acceptance of the note would have been sufficient to restore plaintiff to membership in the association, provided the note was for the full amount of plaintiff's

1. SETTLEMENT assessment, and if, by accepting from Miller
of assess-
ment: for- the proceeds of such note, the defendant rat-
feiture:
waiver. ified his settlement with plaintiff, and is bound as effectually by such settlement as though it had been made directly between defendant and plaintiff at the time of the negotiation thereof with Miller, assuming to act as agent, the question arises whether such settlement restored plaintiff to membership. It is well settled that an acceptance of part payment, although stipulated to be in full extinguishment of an indebtedness, does not constitute full payment. If plaintiff had however, an unliquidated claim against defendant, which he might have introduced as a set-off against defendant's claim for the assessment, then an agreement in settlement of this unliquidated claim to accept less than the full amount of the assessment would be a valid compromise, and the acceptance of the $20 in full of the assessment, after deducting the unliquidated claim, would be a settlement based on a sufficient consideration, and therefore valid and binding. *Pollman, etc., Co. v. St. Louis*, 145 Mo. 651 (47 S. W. Rep. 563); *Ostrander v. Scott*, 161 Ill. 339 (43 N. E. Rep. 1089); *Tanner v. Merrill*, 108 Mich. 58 (65 N. W. Rep. 664, 31 L. R. A. 171, 62 Am. St. Rep. 687); *Marion v. Heimbach*, 62 Minn. 214 (64 N. W. Rep. 386); *Greenlee v. Mosnat*, 116 Iowa, 534.

The sole question as to payment, then, is whether the claim of plaintiff for the loss was such a claim as would support a settlement by way of compromise. It is, of

course, true that the absolute legal validity of the claim
which is compromised is not essential to the validity of
the agreement which is made by way of compromise. If
the claim is made in good faith, as one which might be
enforced in law or equity, then a settlement thereof will
be sustained. Turning, now, to the facts as shown by this
record for the purpose of ascertaining whether the claim
of plaintiff for loss was such a claim as would support a
settlement, we find that this loss was one of which no
notice had been given to the company, and on which no
demand had been made by plaintiff until long after the
time when there should have been such notice and demand
in order to give rise to any obligation of the defendant
under the contract of insurance. Nor is it stipulated that
the claim was made in good faith and based upon any
alleged liability of the defendant. The stipulation merely
recites that in the transaction with Miller "plaintiff
claimed that he had a loss to his crops from hail in July or
August, 1899, which the defendant, he claimed, had not
paid, and of which loss the said plaintiff had in fact never
given any notice to the defendant." It appears, therefore,
that plaintiff's claim was, not that defendant was liable to
him under the terms of the contract of insurance, but that
he had sustained a loss, which, had he taken steps to per-
fect it, might have been made the basis of a valid claim.
It seems to us that the stipulation does not go far enough
to show any contention that the asserted claim was valid.
The case, therefore, was simply this: Conceding that
there was no legal liability, the defendant (acting through
its unauthorized agent, Miller, whose acts we concede for
the purpose of the case to have been fully ratified) was
willing to accept $20 in full payment of plaintiff's assess-
ment of $38, and remit to plaintiff the balance, without
regard to the genuineness of plaintiff's claim. The situa-
tion was not different from that involved in the ordinary
case where the creditor, feeling uncertain as to the collec-

tion of the amount of an admitted indebtedness, accepts part payment in full satisfaction. Such a settlement is not binding, and the creditor is not under obligation to return the part payment actually received before proceeding to collect the balance which is in fact unpaid. *Home Fire Ins. Co. v. Skoumal*, 51 Neb. 655 (71 N. W. Rep. 290); 1 Beach on Contracts, sections 173-4.

But we think that the question of whether plaintiff satisfied by payment or valid compromise the full amount of his $38 assessment is not the ultimate question in this case. While it is not mentioned in the stipulation that plaintiff and Miller were negotiating with reference to the restoration of plaintiff to membership in the defendant association, nevertheless that must have been a matter as much within the contemplation of the two as the extinguishment of plaintiff's legal liability for the assessment, for, whenever plaintiff's indebtedness to the defendant was adjusted to defendant's satisfaction, his suspension was terminated, and he became once more a member in good standing. With reference to the termination of plaintiff's suspension and his restoration to good standing as a member of the association, the legal satisfaction of the $38 assessment was not conclusive. We think there can be no doubt that whenever an association of this kind accepts what it indicates to the member as a sufficient satisfaction of the dues for which he is suspended and leads him to think that he is thereby restored to membership, it is estopped from afterwards saying that his restoration did not take place. It cannot be that such an association can lead the member to think that he has done all which the association requires him to do, and then, after a loss has occurred, insist that what he did was not sufficient in legal effect to work a restoration. Unquestionably plaintiff must have given the $20 note in the belief that after it was given he would be entitled to the benefit of his contract of insurance from that time. In this view of

the case it is immaterial whether the note taken amounted to payment of the indebtedness, or whether the agent had authority to adjust plaintiff's old claim or accept less than the full amount of the assessment.    The agent certainly did have authority to settle this assessment with the plaintiff, and determine on what terms he should be restored to membership in the company.    No further action of the company than the adjustment of this assessment was necessary to restore the plaintiff to full membership. Even if the agent had not authority to accept less than full payment, the company accepted the benefits of the transaction, and the retention thereof was a full ratification of the agent's acts.

   With reference to the retention of the benefits of the transaction, it is urged that, as defendant was entitled to the amount received, without regard to any agreement by the agent to allow the amount of the old loss or restoration of the plaintiff to membership, the retention of that amount would not be a ratification.    In other words, that the defendant might ratify so much of the action of the agent as resulted in securing the proceeds of the $20 note, without ratifying the portion of the transaction which consisted of extinguishment of the balance of the claim and restoration to membership; and counsel for defendant cite some authorities which they claim support their views, but these authorities are cases of attempted rescission of a contract, not attempted repudiation of the acts of an agent, and between the two there is a manifest difference.    No authorities are cited, and we know of none, which will justify the view contended for that, when an agent acts without authority in securing a settlement, the principal can retain the benefit of the settlement by the agent, and disavow the effect thereof.    The proposition is too elementary to require reference to authorities.

   If there were any controversy with reference to the understanding with which the settlement with plaintiff

was made and the proceeds thereof retained by the defendant, it is put at rest by the subsequent act of the defendant in notifying the plaintiff, on the 19th of September, 1900, that an assessment of $38 for that year was due. This, it will be observed, was subsequent to all the matters to which we have heretofore referred. The act of defendant is admissible for the purpose of throwing light on its intention in retaining the benefit of the settlement made August 10th, and reported to it on the 13th. That the subsequent acts of the parties may throw light on the intention involved in a previous transaction is a rule of evidence.

Counsel for defendant contend that there was no issue as to whether defendant had waived its right to claim a forfeiture or suspension of plaintiff's certificate because of

2. INSUFFICI-ency of al-legation: failure to object: waiver.

plaintiff's neglect to pay the assessment for 1899 promptly when due. But it is alleged in the petition that defendant had waived suspension of the policy on this ground, and, while that allegation may have been a mere legal conclusion, nevertheless, no objection having been taken on that ground, it cannot be ignored as presenting an issue of fact. It will not do to allow a general allegation of that character to go unchallenged until the conclusion of the case, which is tried on the issue thus informally presented, and then contend that no such issue was before the court. While it is true that a waiver must be pleaded, it is also true that insufficiency of the pleading of a waiver, where it is apparent that a waiver is intended to be pleaded, may be itself waived by failure to seasonably raise the objection.

We have considered all the questions that are likely to occur on a new trial, and, finding that there was error in the action of the lower court in rendering judgment for defendant, such judgment is REVERSED.