STREET GRADING DIST. NO. 60 OF LITTLE ROCK, ARK., v. HAGADORN
et al.†

(Circuit Court of Appeals, Eighth Circuit.   March 31, 1911.)

No. 2,713.

1. RECEIVERS (§ 6*)—APPOINTMENT—ADEQUATE REMEDY AT LAW.
Kirby's Dig. Ark. § 5664 et seq., provides for the organization of local improvement districts in certain cities and prescribes a complete scheme to pay for such improvements.   Section 5720 authorizes the board of improvement to "pledge" uncollected assessments to repay loans obtained to expedite work.   Bonds were issued under the latter section, and a holder obtained judgment on interest coupons.   The judgment not being paid, he sues in equity for appointment of a receiver to collect the unpaid assessments.   *Held*, that the suit does not lie because of existence of an adequate remedy at law by mandamus or enforcement of payment under the statutes cited.
[Ed. Note.—For other cases, see Receivers, Cent. Dig. § 12;  Dec. Dig. § 6.*]

2. PLEDGES (§ 11*)—DELIVERY.
The word "pledge," as used in Kirby's Dig. Ark. § 5720, is used in its colloquial, rather than technical, sense, since there can be no pledge without delivery and there could be no delivery of "uncollected assessments."
[Ed. Note.—For other cases, see Pledges, Dec. Dig. § 11.*
For other definitions, see Words and Phrases, vol. 5, pp. 5412–5417; vol. 8, p. 7756.]

3. JUDGMENT (§ 707*)—CONCLUSIVENESS—PERSONS NOT BOUND.
Judgment that a local improvement district was unlawfully organized does not affect holders of bonds of the district who were not parties to the suit.
[Ed. Note.—For other cases, see Judgment, Dec. Dig. § 707.*]

4. APPEAL AND ERROR (§ 882*)—DISMISSAL—RIGHT TO—CONSENT DECREES.
Appellees are not entitled to dismissal of the decree appealed from because it was entered by consent.
[Ed. Note.—For other cases, see Appeal and Error, Dec. Dig. § 882.*]

5. APPEAL AND ERROR (§ 882*)—RIGHT TO COMPLAIN.
Ordinarily a party cannot complain of error procured or acquiesced in by him, but the rule does not apply when the trial court was without jurisdiction.
[Ed. Note.—For other cases, see Appeal and Error, Dec. Dig. § 882.*]

6. APPEAL AND ERROR (§ 184*)—OBJECTIONS—TIME FOR RAISING.
The rule that the existence of an adequate remedy at law cannot be raised for the first time in an appellate court is always subject to the qualification that jurisdiction over the subject-matter exists, and that the trial court is competent to grant the relief prayed for.
[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 1179–1183;  Dec. Dig. § 184.*]

Appeal from the Circuit Court of the United States for the Eastern District of Arkansas.

Bill by William J. Hagadorn and others against Street Grading District No. 60 of Little Rock, Arkansas.   From the decree, defendant appeals.   Reversed, and bill dismissed.

The statutes of Arkansas (section 5664 et seq., Kirby's Digest 1904) empower any 10 resident owners of real property in any portion of a city of the first

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes
† Rehearing denied May 13, 1911.

or second class to petition the city council to take steps toward making improvements in streets, alleys, and sewers.

Upon the receipt of such a petition, it becomes the duty of the council to lay off the portion of the city mentioned in the petition into one or more improvement districts. An ordinance of the council establishing the district is thereafter required to be published in some newspaper; and, within three months after that publication, a majority in value of the owners of real property within the district may present to the council a petition designating the nature of the improvements to be undertaken and praying that they may be made and that the cost thereof be assessed as a charge upon the real estate situated within the district. Upon this being done the council is required to appoint three persons, owners of real property in the district, to act as a board of improvement. This board, upon its members qualifying as provided by law, must then form plans for the improvement and secure estimates of its cost and report the same to the council; after which the council is required to appoint three electors of the city to constitute a board of assessment, to assess the benefits to be received by each lot of land in the district as a result of the proposed improvement. Upon such assessment being reported to the city clerk, the council must provide by ordinance for the payment thereof in successive annual installments and fix the day in each year for their payment. The city clerk must then extend the amount of the assessment against each lot, deliver to the city collector a warrant commanding him to make the collections accordingly, and to pay the same over to the treasurer of the local improvement district.

In order to expedite the improvement, the board is authorized to borrow money not exceeding 90 per cent. of the estimated cost of the work and pledge all uncollected assessments for the payment thereof.

Pursuant to the foregoing statutory scheme, Street Grading District No. 60 of Little Rock, defendant below and appellant here, was created. The property within the district was assessed to pay the sum of $17,032 to meet the cost of the proposed improvement. The board, desiring to expedite the work, concluded to borrow the money and proceed at once with it. Accordingly, it executed a series of 34 bonds each for $500 bearing interest, represented by coupons, at the rate of 6 per cent. per annum and executed a written contract pledging to the Union Trust Company and to L. A. Coquard, as trustees, all the uncollected assessments as security for their payment. On the strength of this pledge the bonds were sold in open market and fell into the hands of innocent holders for value. Out of the proceeds of this sale the projected improvement was made.

William J. Hagadorn acquired some of these bonds and afterwards, in 1905, the coupons not having been paid, recovered a judgment thereon for $3,695.84.

This judgment not having been paid, he, together with the trustees, instituted this suit, charging, in addition to the foregoing facts, that the collector had failed and refused to collect the assessments, and that the defendant, the Grading District, had secured a decision of the Supreme Court of Arkansas in a case to which Hagadorn was not a party that the ordinance creating the Grading District was void. Complainants therefore prayed that a receiver be appointed to collect the unpaid assessments and to enforce the pledge for the payment of the bonds. The defendant, the Grading District, answered the bill admitting that the collector had failed to collect, denying that he had refused to collect the assessment levied by the city council, and alleging that he had been wholly unable to do so. All the other allegations of the bill were admitted, and the defendant joined in the prayer thereof and asked the court to grant the complainants the relief prayed for.

Upon this bill and answer the cause came on for a hearing, and the learned trial court appointed Eben W. Kimball receiver and empowered him to collect the unpaid assessments which had been levied by the city council or sufficient at least to pay the judgment theretofore obtained by Hagadorn, together with interest and costs, and also to pay the amount due on all bonds and coupons issued by the Grading District, the payment of which had been secured by the contract executed by it to the Union Trust Company and to Coquard. Provision was made for ascertaining the amount due to any holders

of the bonds and coupons other than the ones represented by the former judgment. From that decree the defendant appealed to this court.

Among the errors assigned are that complainants had a full, complete, and adequate remedy at law, and the Circuit Court had no jurisdiction in equity to hear and determine the action.

T. D. Crawford (Dan W. Jones and John H. Hamiter, on the brief), for appellant.

George B. Rose (U. M. Rose, W. E. Hemingway, D. H. Cantrell, and J. F. Loughborough, on the brief), for appellees.

Before VAN DEVANTER, Circuit Judge, now Circuit Justice, and ADAMS, Circuit Judge.

ADAMS, Circuit Judge (after stating the facts as above). The contention of the appellant on the merits of the case may be briefly stated as follows: That the Grading District was never legally organized because (a) the petition for the formation of the district was not signed by 10 resident owners of real property within the district, as required by section 5665, Kirby's Digest, and (b) because a majority in value of the owners of real property within the district failed to sign the petition for the improvements as required by section 5667, Kirby's Digest. These are interesting questions; but, if jurisdiction to decide them is lacking, it would be idle to discuss them.

[1] The only relief sought by the bill or granted by the decree appealed from was the appointment of a receiver to collect the annual installments of an assessment which had been duly made and pledged by the defendant Grading District as security for the payment of complainants' bonds.

Is jurisdiction for that purpose vested in a court of equity? In other words, was there an adequate remedy at law?

We think this question has been conclusively answered by the Supreme Court of the United States in several cases.

In Rees v. City of Watertown, 19 Wall. 107, 22 L. Ed. 72, a court of equity was asked to appoint its marshal to levy and collect a tax to pay judgments recovered against a city. Peremptory writs of mandamus had been issued against the officers of the city to compel the levy and collection of the tax; but, before the writ could be served, a majority of the defendants resigned their offices. In other ways the officers of the city had succeeded in preventing the levy and collection of taxes to pay the judgment. The Supreme Court, speaking by Mr. Justice Hunt, in denying the power of the court to grant relief, said:

"We are of the opinion that this court has not the power to direct a tax to be levied for the payment of these judgments. This power to impose burdens and raise money is the highest attribute of sovereignty, and is exercised, first, to raise money for public purposes only. * * * It is a power that has not been extended to the judiciary. * * * The appropriate remedy of the plaintiff was and is a writ of mandamus. This may be repeated as often as the occasion requires. It is a judicial writ, a part of a recognized course of legal proceedings. * * * The plaintiff alleges, however, in the present case, that he has issued such a writ on three different occasions; that, by means of the aid afforded by the Legislature and by the devices and contrivances set forth in the bill, the writs have been fruitless; that, in fact, they afford him no remedy. The remedy is in law and in theory adequate and perfect. The difficulty is in its execution only. The want of

a remedy and the inability to obtain the fruits of a remedy are quite distinct, and yet they are confounded in the present proceeding. * * * The legal remedy is adequate and complete. and time and the law must perfect its execution."

In Thompson v. Allen County, 115 U. S. 550, 6 Sup. Ct. 140, 29 L. Ed. 472, a case was under consideration wherein the complainant had obtained two judgments against the county on bonds issued by it to pay a subscription to the stock of a railroad company. After nulla bona returns on execution issued on these judgments, writs of mandamus had issued to the justices of the county court to levy a tax for the purpose of paying the judgments. The collector duly elected to collect the tax so levied refused to accept the office or qualify for its performance. The bill averred that by reason of the hostility of the citizens and taxpayers of the county no one could be found to perform the duty of collector. The prayer of the bill was that the court appoint a receiver to collect the taxes and pay over the money so collected in satisfaction of complainant's judgments. It was stipulated in the cause:

"That the complainant is without remedy for the collection of its debt herein, except through the aid of this court in the appointment of the receiver, as prayed for in the bill, or other appropriate order of the court."

Mr. Justice Miller delivered the opinion of the court, and after reviewing Walkley v. City of Muscatine, 6 Wall. 481, 18 L. Ed. 930, Rees v. Watertown, 19 Wall. 107, 22 L. Ed. 72, Heine v. Levee Commissioners, 19 Wall. 655, 22 L. Ed. 223, and Meriwether v. Garrett, 102 U. S. 472, 26 L. Ed. 197, and other cases, all of which had denied the remedy in equity to enforce the collection of taxes, made these observations:

"We see no more reason to hold that the collection of taxes already assessed is a function of a court of equity than the levy or assessment of such taxes. A court of law possesses no power to levy taxes. Its power to compel officers who are lawfully appointed for that purpose, in a case where the duty to do so is clear and is strictly ministerial, rests upon a ground very different from and much narrower than that under which a court of chancery would act in appointing its own officer either to assess or collect such a tax. * * * The power to enforce collection when the tax is levied, or to cause it to be levied by existing officers, is a common-law power, strictly guarded and limited to cases of mere ministerial duty, and is not one of the powers of a court of chancery. * * * No such power has ever yet been exercised by a court of chancery. The appointment of its own officer to collect taxes levied by order of a common-law court is as much without authority, as to appoint the same officer to levy and collect the tax. * * * Not only are the decisions here reviewed of our own court clearly opposed to the exercise of this power by the court of equity, but the decisions of the highest court of the state of Kentucky are equally emphatic. It is the powers derived from the statute law of that state under which alone this tax can be collected."

See, to the same effect, Barkley v. Levee Commissioners, 93 U. S. 258, 265, 23 L. Ed. 893; Lyon v. Alley, 130 U. S. 177, 188, 9 Sup. Ct. 480, 32 L. Ed. 899; South Dakota v. North Carolina, 192 U. S. 286, 319, 321, 24 Sup. Ct. 269, 48 L. Ed. 448.

To escape the doctrine of the foregoing cases, learned counsel for the appellees contend that, because the "uncollected assessments" in-

volved in this case were pledged to the bondholders, they thereby acquired a lien which confers upon them an equitable standing for its enforcement or foreclosure.

There are several reasons why this contention cannot be sustained.

[2] Section 5720, Kirby's Digest, in authorizing the board of improvement to "pledge uncollected assessments for the payment of the money borrowed," obviously employed the word in its colloquial, rather than in its technical, meaning. The words "uncollected assessments" evidence a chose in action rather than a thing of substance. Not being susceptible of delivery, they could not be the subject-matter of a technical pledge as known to the law. Casey v. Cavaroc, 96 U. S. 467, 490, 24 L. Ed. 779.

In Barkley v. Levee Commissioners, supra, it was said:

"Liens for taxes are very generally created throughout the country; but it is never supposed that the public creditors, to whom the money raised by tax is to be paid, have the benefit of such lien. It is created for the benefit of the public authorities, to enable them with greater certainty and facility to collect the taxes, without the embarrassment of other pretended claims against the property taxed."

In Brooke v. City of Philadelphia, 162 Pa. 123, 129, 29 Atl. 387, 389 (24 L. R. A. 781), the Supreme Court of Pennsylvania, construing a constitutional provision that "every city shall create a sinking fund which shall be inviolably pledged for the payment of the public debt," said:

"Every city shall create a sinking fund. That is, there shall be set apart from all other city money, for a specific purpose, the redemption or payment of the funded debt, a portion of the annual revenues of the city. Then, when this portion of the revenues reaches the fund, it is inviolably pledged for the payment of the funded debt. No temptation however great, no necessity however imperious, shall move the city to divert $1 of the fund to a purpose other than the redemption or payment of the debt. The word 'pledged' is to have, in its connection here, not a technical legal definition, but its obvious meaning, that of a solemn promise, which, under no possible circumstances, shall be violated."

In Christian v. Atlantic & N. C. Railroad, 133 U. S. 233, 10 Sup. Ct. 260, 33 L. Ed. 589, it appears that, in the act incorporating the railroad company and authorizing the issue of bonds, it was provided that, as security for their redemption, the public faith of the state "is hereby pledged to the holders, and in addition thereto all the stock held by the state in the railroad company shall be pledged for that purpose." The suit was one by bondholders to foreclose the so-called "pledge." The court said:

"The proposal is to take the property of the state and apply it to the payment of its debts due to the plaintiffs, and to do it through the instrumentality of a court of equity. The ground on which it is contended that this may be done is that the property is affected by a pledge, and may, therefore, be dealt with in rem. But a pledge, in the legal sense, requires to be delivered to the pledgee. He must have the possession of it. * * * In the case of stocks and other choses in action, the pledgee must have possession of the certificate or other documentary title, with a transfer executed to himself, or in blank (unless payable to bearer), so as to give him the control and power of disposal of it. Such things are then called pledges. * * * This was nothing more than a promise that the stock should be held and set apart for the payment of the bonds, and that the dividends should be applied to the interest. There was no actual pledge. It was no more of a pledge than

is made by a farmer when he pledges his growing crop, or his stock of cattle, for the payment of a debt, without any delivery thereof. He does not use the word in its technical, but in its popular sense."

There is another reason also why complainants cannot invoke the equitable remedy sought in this case. The statutes creating improvement districts in Arkansas (section 5664 et seq., Kirby's Digest) disclose that the Legislature provided a complete scheme not only for their creation, but for raising money to defray the cost and expense of the improvements. Property was to be taxed, and a specific provision was made (section 5686) for the collection of the tax by the city collector upon warrants issued to him by the city clerk commanding him to make the collections according to the assessments as made. This mode of collecting the taxes for the payment of complainants' bonds constituted a part of the contract under and subject to which they were purchased. The enforcement of this provision, namely, enforcement of collection in the mode and through the officers named in the law, is all complainants are entitled to under their contract, and, accordingly, is the only remedy known to the law in case of nonpayment of the bonds.

It is said in Rees v. Watertown, 19 Wall. 107, 22 L. Ed. 72:

"The remedies for the collection of a debt are essential parts of the contract of indebtedness, and those in existence at the time it is incurred must be substantially preserved to the creditor. * * * Of these the creditor must take notice, and, if all the remedies are preserved to him which were in existence when his debt was contracted, he has no cause of complaint. * * * The plaintiff invokes the aid of the principle that, all legal remedies having failed, the court of chancery must give him a remedy; that there is a wrong which cannot be righted elsewhere, and hence the right must be sustained in chancery. The difficulty arises from too broad an application of a general principle. * * * A court of equity cannot, by avowing that there is a right but no remedy known to the law, create a remedy in violation of law, or even without the authority of law. It acts upon established principles not only, but through established channels. * * * The writ of mandamus is, no doubt, the regular remedy in cases like the present, and ordinarily it is adequate and its results are satisfactory. The plaintiff alleges, however, in the present case, that he has issued such a writ on three different occasions; that, by means of the aid afforded by the Legislature and by the devices and contrivances set forth in the bill, the writs have been fruitless; that, in fact, they afford him no remedy. The remedy is, in law and in theory, adequate and perfect. The difficulty is in its execution only. The want of a remedy and the inability to obtain the fruits of a remedy are quite distinct, and yet they are confounded in the present proceeding."

It was said in Heine v. Levee Commissioners, 19 Wall. 655, 22 L. Ed. 223:

"It is very clearly shown that the total failure of ordinary remedies does not confer upon the court of chancery an unlimited power to give relief. Such relief as is consistent with the general law of the land, and authorized by the principles and practices of the courts of equity, will, under such circumstances, be administered. But the hardship of the case, and the failure of the mode of procedure established by law, is not sufficient to justify a court of equity to depart from all precedent and assume an unregulated power of administering abstract justice at the expense of well-settled principles."

It is clear, we think, in view of these authorities, that complainants have mistaken their remedy. The writ of mandamus theoretically, and

we are unable to see why not practically, affords them an adequate remedy at law.

[3] The fact that the Supreme Court of Arkansas has ruled in another case in which complainants were not parties that the organization of the Grading District was unlawful is not an adjudication affecting complainants' rights. They were not parties to it. They can have their day in whatever court is open to them regardless of that decision except in so far as it is persuasive of the right.

[4] The appellees at the outset of their argument in this case moved to dismiss this appeal because the decree below was entered by consent. This motion must be denied.

[5] Ordinarily no party can complain of an error procured or acquiesced in by him. N. Y. Elevated Railroad v. Fifth Nat. Bank, 135 U. S. 432, 10 Sup. Ct. 743, 34 L. Ed. 231. But this rule cannot prevail when the trial court was without jurisdiction to enter the decree consented to. Thompson v. Railroad Companies, 6 Wall. 134, 18 L. Ed. 765; Morgan v. Beloit, 7 Wall. 613, 618, 19 L. Ed. 203.

[6] It is also contended that, as no objection was made to the jurisdiction in equity on the ground that there was an adequate remedy at law, such objection was waived and cannot be raised for the first time in this court. This, we think, is untenable. The rule frequently announced and fully recognized that the existence of an adequate remedy at law cannot be raised for the first time in an appellate court is always subject to the qualification that jurisdiction over the subject-matter exists, and that the trial court is competent to grant the relief prayed for. Lewis v. Cocks, 23 Wall. 466, 23 L. Ed. 70; Reynes v. Dumont, 130 U. S. 354, 395, 9 Sup. Ct. 486, 32 L. Ed. 934; Brown v. Lake Superior Iron Co., 134 U. S. 530, 536, 10 Sup. Ct. 604, 33 L. Ed. 1021; Allen v. Pullman's Palace Car Co., 139 U. S. 658, 662, 11 Sup. Ct. 682, 35 L. Ed. 303; Southern Pacific v. United States, 200 U. S. 341, 349, 26 Sup. Ct. 296, 50 L. Ed. 507. The doctrine of these cases is that the court for its own protection, and sua sponte, "may prevent matters purely cognizable at law from being drawn into chancery at the pleasure of the parties interested." Reynes v. Dumont, supra.

It results that the decree of the Circuit Court must be reversed, and the bill dismissed. This will be without prejudice, however, to complainants' right to proceed by mandamus. It is so ordered.

NOTE.—As District Judge Philips sat as a member of the court at the hearing of this cause, participated in its consideration, and concurred in the conclusion which is announced in the foregoing opinion. we have taken pleasure in submitting the opinion to him for his consideration; and, notwithstanding the fact that by his retirement from office in the meantime he is now unable to speak officially. we feel an additional assurance of its soundness by the fact of his personal approbation which we are authorized to announce.