**QUALITY REALTY CO. v. WABASH RY. CO.**

**No. 8770.**

Circuit Court of Appeals, Eighth Circuit.
May 25, 1931.

Ben A. Wood and John M. Goodwin, both of St. Louis, Mo., for appellant.

N. S. Brown, of St. Louis, Mo. (Homer Hall, of St. Louis, Mo., on the brief), for appellee.

Before KENYON and VAN VALKENBURGH, Circuit Judges.

VAN VALKENBURGH, Circuit Judge.

The Hawthorne Investment Company, a corporation of St. Louis, Mo., on and prior to July 11, 1911, was the owner of all of city block 3917 of said city. On that date, it entered into a contract with the Wabash Railroad Company, predecessor of appellee Railway Company. Block 3917 is bounded on the north by Forest Park boulevard, on the east by Sarah street, on the south by Duncan avenue, and on the west by Boyle avenue. The main line of the Wabash runs parallel with, and somewhat more than a city block south of, Duncan avenue. Prior to July 11, 1911, that portion of block 3917 fronting on Forest Park boulevard was restricted to residence use. The restrictions expired about that time, and the Hawthorne Investment Company undertook to convert this entire city block into an industrial district. To this end, in platting the block, it reserved a strip of ground sixteen feet wide, running from the intersection of Sarah street and Duncan avenue northwestwardly a short distance, thence directly west, approximately through the

middle of said block to Boyle avenue, for the purpose of placing thereon a railroad lead track, from which switches might be run to the lots on either side thereof, to serve the industries that might be induced to locate on the lots adjoining this sixteen-foot strip, which said lots were offered by the Hawthorne Company for industrial sites. This plan of establishing an industrial district was laid before the Wabash Railroad Company, and, after some negotiations, the contract of July 11, 1911, resulted. This contract recited that the Investment Company, as owner of certain industrial properties in city block 3917 in St. Louis, desired, for the purpose of the industrial development of said property, to have a railroad track constructed from the main line of the Wabash Company, beginning at a point approximately two hundred and fifty-four (254) feet east of the east line of Sarah street in said city, and extending thence in a northerly direction to the south line of Duncan avenue; thence across Duncan avenue by means of an overhead bridge or viaduct (to be constructed as in said contract provided); thence in a general westerly direction to or near the east line of Boyle avenue in said city block 3917. The Wabash Company expressed its willingness to construct, or to have constructed, the railroad track in question, in accordance with the terms and provisions of the contract. Under these terms the Investment Company was to and did, at its own cost and expense, furnish all tools, materials, labor, machinery, and other things necessary to construct, and did construct, the overhead bridge or viaduct across Duncan avenue at its-intersection with Sarah street, in accordance with an ordinance authorizing this structure. The Investment Company further was to maintain this viaduct in a safe condition for the passage of railway rolling stock, and as required by the municipal authorities of St. Louis. After the construction and acceptance of this viaduct, the Wabash Company, upon the written request of the Investment Company, was to, and did, construct a railroad track from the point in its main line two hundred and fifty-four (254) feet east of the east line of Sarah street, over the route hereinabove described, to a point at or near the east line of Boyle avenue. It was further provided that the Investment Company was to deposit with the Wabash Company the estimated cost of the materials and labor necessary for the construction of the track covered by said written request; and should grant to the Wabash Company a right of way for that part of said track located within the limits of city block 3917. The Wabash Company was to keep an accurate account of the cost of this construction and was, thereafter, to refund to the Investment Company the cost of the construction of that part of the track extending from the point of its connection with the main track of the Wabash Company to the south line of the viaduct or railroad bridge. This refund was to be at the rate of two dollars ($2.00) "per loaded car shipped from or delivered to any industry which may be now or hereafter located upon the property of the Investment Company situate in City Block 3917, and upon which the Wabash Company shall have received a road haul. * * * This refund shall continue to be made by the Wabash Company to the Investment Company until the cost of constructing that part of the said track from the point of connection with the main line of the Wabash Company to the south line of the viaduct or railroad bridge, shall have been refunded to the Investment Company, but not thereafter."

The Wabash Company was to maintain, at its own cost and expense, that part of the track last above described, and was also to keep the remaining part of the track in repair, but at the expense of the Investment Company. Following are other material parts of the contract:

"The Wabash Company shall at all times have the right of full control of the use of the said railroad track and in case any industries are located upon the property of the Investment Company, in said Block 3917, which may desire extensions leading from the said railroad track to the said industries, then the Wabash Company will construct, maintain and operate such extensions subject to the terms and conditions of the usual side track agreement of the Wabash Company. * * *

"This agreement shall be binding upon and shall inure to the benefit of the respective successors and assigns of the parties hereto, and shall remain in full force and effect for a period of Five (5) years from the date hereof, and thereafter until either party hereto shall give to the other party Three (3) months written notice of its intention to terminate this agreement and at the end of which time (unless otherwise terminated as herein provided) this agreement shall absolutely cease and determine."

Meantime, the Hawthorne Investment Company and its successor, the Quality Realty Company, have sold the lots in city block 3917 to various industries, among them J. I. Case Threshing Machine Company, Art Mo-

saic & Tile Company, Firestone Tire & Rubber Company, Linde Air Products Company, Goodyear Rubber Company, Kewanee Boiler Company, Standard Sanitary Manufacturing Company, Ford Motor Company, American Radiator Company, Wolff Manufacturing Company, and St. Louis Comey Company, all of which, except one, own, and all of which maintain industrial spur tracks connecting with the switching lead track on the sixteen-foot strip over which appellee serves the aforesaid industries. In the deeds to these industries, the Hawthorne Investment Company and/or appellant, its successor, has, by instruments of conveyance, conveyed the fee-simple title to their respective lots and parcels of ground, together with permanent easements in and over the sixteen-foot railroad right of way. These grants of easements are in various effective forms. That to American Radiator Company, of date May, 1913, reads thus: "Including the right to forever use in common with other owners of property abutting thereon the certain railroad track laid on the 16 foot railroad right-of-way which track shall be used for switching purposes only."

That granted to Linde Air Products Company in April, 1915, is as follows: "Including the right to forever use in common with other owners of property abutting thereon the certain railroad right-of-way above set forth now owned by the Hawthorne Investment Company and connecting with main line of Wabash R. R. Which track shall be used for switching purposes only and shall be maintained by Hawthorne Investment Company or its assigns."

Between March 20, 1917, and February 16, 1917, appellant made continuous efforts to effect a sale of this right of way and tracks to appellee. On the latter date, it gave the three months' notice of its intention to terminate the contract of July 11, 1911, to become effective May 16, 1917. Again it sought to sell or lease this trackage to appellee. The Wabash replied that appellant's predecessor built this track as an inducement for the location of industries, which would permit it to dispose of the property in block 3917; that the railroad was then performing service for the industries which had purchased property adjacent to this trackage; that appellant owned nothing which the railway desired to purchase. It announced that it would not operate over this lead track on and after May 16, 1917. To prevent injury to the industries, appellant and appellee on May 9, 1917, entered into an agreement containing the following stipulation: "It is hereby stipulated and agreed that in order that such industries may secure the service now accorded them over the tracks referred to, the Wabash Railway Company may and said Wabash Railway Company hereby agrees to, use and operate over said track for a period expiring November 30, 1917, for the purpose of serving the industries adjacent thereto, pending a determination of the controversy existing between the parties hereto respecting the obligation of the Wabash Railway Company, if any, to compensate the Quality Realty Company for the use of said track, or the right of the Quality Realty Company to exact compensation therefor. The right hereby granted the Wabash Railway Company, and the obligation hereby assumed by it to perform said service shall be without prejudice to the rights of either of the parties hereto, and shall cease at midnight, November 30, 1917."

It was further understood that the respective obligations and rights of the parties might be determined either by arbitration or in some proceeding brought by either party, or by any of said industries, or other interested party. This agreement was extended successively by indorsement to March 1, 1918, and September 1, 1918, and not thereafter. Throughout, appellee refused to recognize appellant's claims for compensation. The Wabash was under federal control from January 1, 1918, to March 1, 1920. September 4, 1918, the Director General rejected appellant's claim for compensation for the use of the track. Appellee has continued to serve the industries in city block 3917. Appellant continued to pay for the maintenance of that part of the track which, in the contract of July 11, 1911, it had agreed to maintain, until the close of 1923, the actual work being done by appellee. January 15, 1926, appellant brought suit against appellee in the state court, praying that the Railway Company be enjoined from further using the trackage over said sixteen-foot strip in said city block 3917, and be required to account to appellant for the use of the same since May 16, 1917. The case was removed to the District Court for the Eastern District of Missouri because of diversity of citizenship. September 21, 1926, appellant filed an amended bill of complaint, not contained in the record. June 23, 1927, it filed a second amended bill in which it joined the various industries, pursuant to an order of court entered at the instance of appellee. The prayer of this amended bill, which elim-

inated that for injunctive relief, reads thus: "'Wherefore, complainant prays that defendant Wabash Railway Company be required to render strict account to complainant of the number of loaded cars shipped in and out over said track since May 16, 1917; that Two Dollars ($2.00) per loaded car compensation to plaintiff for the use of said track be decreed to be a reasonable compensation for said use; that the defendant be required to account for and pay to the complainant such sum so determined upon as found to be due to complainant for said use, control and occupation of said strip; and for such other and further orders and relief as to the Court seems meet and just."

Before trial, appellant entered a dismissal as to all defendants except the Wabash Company. The trial court gave certain declarations of law requested by appellee, and entered a decree dismissing appellant's bill.

■ At the threshold, we are met with the contention of appellee that "plaintiff's case, under its second amended petition, as amended, is an action at law, and this appeal should be dismissed." It is pointed out that plaintiff voluntarily amended its bill of complaint by striking therefrom its prayer for injunctive relief, leaving as its sole cause of action a claim for money judgment. This action was taken before trial. No written stipulation waiving a jury was filed, and the parties proceeded to trial before the court without a jury. No objection was made to this procedure. Appellee invokes the rule established by this and other courts, that, in such case the decision of the trial court is like the verdict of a jury, assailable only on the ground that there was no substantial evidence in support of it, "and then it is reviewable only when a request has been made to the trial court before the close of the trial that it adjudge, on the specific ground that there was no substantial evidence to sustain any other conclusion, either all the issues or some specific issue in favor of the requesting party." Wear v. Imperial Window Glass Co. (C. C. A. 8) 224 F. 60, 63; Allen v. Cartan & Jeffrey Co. (C. C. A. 8) 7 F.(2d) 21, 22; Merriam v. Huselton (C. C. A. 8) 45 F.(2d) 983; Buechle v. Montgomery (C. C. A. 8) 45 F. (2d) 987; Fleischmann Const. Co. v. United States, 270 U. S. 349, 46 S. Ct. 284, 70 L. Ed. 624.

■ In this case there were no requests for conclusions of law by appellant. No demurrer to the evidence was filed, nor motion for judgment at the close of all the evidence.

As said by the late Judge Sanborn in Wear v. Imperial Window Glass Co., supra: "The question of law whether or not there was any substantial evidence to sustain any such finding is reviewable, as in a trial by jury, only when a request or a motion is made, denied, and excepted to, or some other like action is taken which fairly presents that question to the trial court and secures its ruling thereon during the trial."

In the instant case, the court did give declarations of law requested by appellee. Probably this court may examine such declarations to determine whether they justify the decision of the trial court. In the absence of any review of the facts, it could not be successfully claimed that the declarations do not correctly declare the law. So much for the situation presented if the case is to be deemed one purely at law, in which appellant had an adequate remedy.

■ But another important consideration remains. The case, as brought originally, confessedly belonged to a class cognizable in equity. The question presented is whether, since the elimination of the prayer for injunctive relief, it still retains its equitable character sufficiently to permit disposition on the equity side. Beyond question it was tried to the court as an equity case, apparently so considered by court and counsel, and without objection from any source. Consistently with this view, the court entered its decision in the form of a "final decree." It has been frequently held that the right to have a cause brought in equity transferred to or tried on the law side of the court may be waived by failure to make timely objection. Greenberg v. Pennsylvania Trust Co. (C. C. A. 3) 19 F.(2d) 824; Henderson Tire & Rubber Co. v. Reeves (C. C. A. 8) 14 F.(2d) 903, 906; Reynes v. Dumont, 130 U. S. 354, 395, 9 S. Ct. 486, 32 L. Ed. 934; Street Grading Dist. v. Hagadorn (C. C. A. 8) 186 F. 451; Southern Pacific R. Co. v. United States, 200 U. S. 341, 26 S. Ct. 296, 50 L. Ed. 507.

■ This ruling, however, is subject to the qualification that the subject-matter is of a class over which a court of equity has jurisdiction, and that the trial court is competent to grant the relief prayed for. Southern Pacific R. Co. v. United States, and Street Grading Dist. v. Hagadorn, supra.

The prayer of the second amended bill of complaint is that the Railway Company be required to "render a strict account to complainant of the number of loaded cars shipped in and out over said track since May 16,

1917" and that $2 per loaded car be decreed to be a reasonable compensation for use of the trackage. We have here not only a prayer for accounting, but a demand that appellee disclose the number of cars shipped in and out over its line during a stated period, as a basis for recovery of the compensation asked. This savors of a prayer for discovery although inartificially pleaded.

■ As said in Southern Pacific R. Co. v. United States, supra: "Discovery, although now seldom the object of a suit in equity, and not always sufficient to uphold a suit when the full information is obtainable by proceedings at law, was a well-recognized ground of equity jurisdiction."

■ We think the rules announced by the Supreme Court in Twist v. Prairie Oil & Gas Co., 274 U. S. 684, 47 S. Ct. 755, 71 L. Ed. 1297, are applicable here. We quote from the syllabi as follows:

"When a suit, begun in a state court, on a cause of action at law joined with one for equitable relief concerning the same subject matter, is treated after removal as a suit in equity, results in an equitable decree, and is appealed by both parties as equitable, it is reviewable as such, upon the assignments of error, and the statutory rule limiting the scope of review in jury-waived cases at law is not applicable.

"It is error to treat such a suit in the appellate court as one at law and affirm the decree without considering the assignments of error.

"The objection that the suit is not within the equity jurisdiction, whether taken in the trial court or the appellate court, does not go to the power of the court as a federal court."

The power and duty of the appellate court is thus stated in the body of the opinion: "The Court of Appeals, being of opinion that the plaintiffs had not established a right to relief in equity, because there was a plain, adequate and complete remedy at law, might, on the undisputed facts, have reversed the decree on that ground without considering the specific errors assigned; and, rightly or wrongly, it might have ordered the bill dismissed without prejudice to the remedy at law; or might conceivably have ordered the case transferred to the law docket; or might have considered the case on the merits as on an equity appeal, in the view that at such stage of the proceedings it was desirable to hold that the objection to the equity jurisdiction had been waived. Compare Southern Pacific [R.] Co. v. United States, 200 U. S. 341, 26 S. Ct. 296, 50 L. Ed. 507."

■■ We think it desirable, at this stage of the proceedings to adopt the course last above stated—to consider the case on the merits as on an equity appeal. It is true that there are many cases of accounting where the jurisdiction is exclusively at law. Jurisdiction in equity may attach when the account presented is so difficult, complicated, and confusing that it cannot well be handled by a jury. Goffe et al. v. Milling Co. (D. C.) 26 F.(2d) 801. While these characteristics of the accounting prayed are not expressly pleaded, we think, in the situation presented, they may legitimately be presumed to sustain the equity jurisdiction invoked.

■ With respect to the merits, appellant and its predecessor have granted to the various industries the permanent use of this sixteen-foot railroad right of way for switching purposes, in connection with shipments to and from their plants. According to the record, the Wabash Company has been serving the industries in this capacity without additional compensation. It is not a trespasser, because appellant has stipulated that it should thus discharge the duty which appellant owed to the industries; that is, to maintain the track in question for switching purposes. The contract of July 11, 1911, provided that, during the existence of that contract, the Wabash Company should, at all times, have the right of full control of the use of said track, and should construct, maintain, and operate any extensions, leading therefrom to industries located upon the property in block 3917, as might be desired by such industries. This contract contemplated no compensation to appellant for the use of this sixteen-foot railroad right of way expressly granted to the Wabash Company. Conceding that this contract of July 11, 1911, expired May 16, 1917, nevertheless, the agreement of May 9, 1917, invited and permitted the railroad to continue to use the property in serving the industries in the same manner as theretofore. That invitation and permission has never been withdrawn. It is true that the Investment Company was asserting a claim to compensation, but the right to such compensation was consistently denied by the Wabash. Nowhere in the record can be found any evidence that the minds of the parties met in agreement upon this point. Nor is there in the record anything from which the right to compensation can be implied. Certainly not from the use of the

property under the express invitation extended and license granted, and in the face of appellee's consistent denial of any obligation on its part to pay therefor. It is clear that, under the permanent easements granted to them, the industries are entitled to procure switching service over this sixteen-foot railroad right of way without compensation to appellant. Nor is any common carrier, employed by the industries for this purpose, under obligation to compensate appellant for such use of this track, the right to which use appellant and its predecessor has granted in perpetuity to the vendees of industrial sites in block 3917 adjacent to this trackage. We do not think the record discloses the granting of a permanent easement to appellee over the track in question, as, in effect, decided by the trial court. The only issue, presented by the second amended bill of complaint, was whether appellant is entitled to compensation for the use of this track since May 16, 1917. The trial court decided that it is not so entitled, and in this we concur. The case is remanded to the District Court, with directions to modify its decree by confining it to a determination of this, the sole issue in the case. As so modified, the decree will be, and is, affirmed. It is so ordered.