HARTON et al. v. McKEE et al.

(Circuit Court, N. D. Georgia. January 24, 1896.)

EQUITY—SPOLIATION OF DOCUMENTS—ESTOPPEL.

In a suit for the specific performance of a contract for the sale of lands, which the defendant had given the plaintiff an option to purchase, it appeared from all the evidence, except as affected by two letters offered by the plaintiff, that the plaintiff had abandoned the option early in 1894. The two letters, purporting to be dated in October and November, 1894, tended to show that negotiations about the option were then pending between plaintiff and defendant, but such letters bore upon their face, plain indication that their dates had been changed from 1893 to 1894, and the circumstances tended to show that they were written in 1893, which defendant contended was the fact. *Held* that, if it were found as a fact that the dates of the letters had been changed by the plaintiff to make a case for himself, he would be thereby barred from all relief, but that, in any event, upon the facts, the letters not having actually been written in 1894, the defendant was entitled to judgment.

Mayson & Hill and L. E. Parsons, Jr., for complainants.

Glenn & Rountree and Eb. T. Williams, for defendants.

NEWMAN, District Judge. This is a bill for specific performance of the contract of sale of lands. The case has now come on for final hearing and determination. In September, 1883, McKee gave to Harton an option in writing to purchase certain lands in Dodge, Ware, Echols, and Clinch counties, in this state. On the 24th of October thereafter, the option was extended until McKee could furnish Harton with an abstract of title to the lands, and Harton should have reasonable time to examine the same. McKee lived in Dawsonville, in this district, and Harton resided in Birmingham, Ala. There was some correspondence during the fall and winter of 1893 and the early part of 1894 in reference to these lands, and to the trade, furnishing the abstract, etc. This is conceded by both sides. It is claimed on the part of the defendants, that in March, 1894, the correspondence was dropped, and that there was no further correspondence until December, 1894, when Harton wrote to McKee on the subject of the lands. There is a question made as to whether this letter was a continuance of the old matter of a trade under the option in reference to the lands in question, or whether it was written by Harton in reference to other lands, concerning which he claims he had some negotiations with McKee. The language of this letter is such that, if it refers to the lands as to which Harton held an option, it would favor very strongly the view that all rights under the option had been previously abandoned, and that Harton desired to renew the negotiations, in order

to make some new contract of purchase. There are two letters in evidence, which, as they stand now, are dated October 24, 1894, and November 16, 1894. One of the main contentions in the case is that the dates of these letters have been changed; that the first has been changed from some other date in October to the 24th, and from 1893 to 1894; that the second has been changed from November 16, 1893, to November 16, 1894. The use made of these letters by Harton is that they would tend, if written upon the dates they now bear, to support his claim that he never abandoned his contract under the option. He claims that the correspondence was continuous on this subject, and that the letters which are in evidence, and others which he is unable to produce or to get from McKee, were written, and will show this to be the fact. The contrary contention for the defendants is that the dates of these letters were changed by Harton to be used for the purpose indicated. On January 15, 1895, Harton and McKee were both in Atlanta. Harton was accompanied by the other complainant, J. H. Parsons. Harton, having had some correspondence and a personal interview with McKee, brought Parsons to Atlanta. McKee was accompanied by Mr. Latner, his friend and lawyer. Harton and Parsons met McKee on the morning of January 15th, about 10 o'clock, and they were to meet subsequently during the day. When they met again, McKee informed them that he had sold the lands to defendant Moore. There has been much discussion as to the real purpose of Harton's and Parsons' visit to Atlanta at this time,—as to whether they desired to carry out the terms of the option contract which Harton had obtained in 1893, or whether they were seeking to make some new and different contract in reference to the land. Both of them have testified that they were in Atlanta, ready and prepared to comply fully with the terms of the option; the defendants contending that all the facts and circumstances show that this is not true. By the terms of the option from McKee to Harton, he would have received for his lands $15,000 in cash, and a mortgage on property worth double the amount for $15,000 more; making $30,000 in all. McKee sold the lands to Moore and his associates for $18,000. There can be no doubt of this, under the evidence.

Just at this point it may be mentioned that there is a question as to whether Moore bought from McKee with notice of Harton's option. As to this there has been considerable evidence, and there has been much discussion. Under the view I take of the case it will be unnecessary to determine this matter of notice. Unless the two letters referred to are genuine as of the date which they now bear, in the opinion of the court, the complainants have no case which entitles them to relief here. An examination of these letters shows unquestionably, as to the one of October 24th, that a figure in the year date has been changed by writing the figure 4 over the figure 3, with an ink blot over the figure 3. It is so apparent, there is no denial by the complainants that this is true. In the month date of the same letter the figure 4 has evidently been changed from some other date. The figure 2 in the month date has not been changed at all, but the figure 4 unquestionably has been

changed; and the evidence on the subject, and its appearance, would seem to indicate that it was changed from the figure 2 to 4, so as to make it appear of date October 24th, instead of the 22d. As to the letter of November 16th, in the year date there has clearly been an erasure with a knife or some other sharp instrument, and the figure 4 written over the erased spot, so as to make the date November 16, 1894. Contemporaneous facts and circumstances are in evidence for the purpose of throwing light on the genuineness of these dates. These facts and circumstances strengthen the view that these two letters were really written in 1893. In the letter of November 16th, allusion is made to the sickness of the writer, McKee; and in another letter, conceded to be genuine, of December 15, 1893, he refers to his sickness, which he says has continued ever since October. The evidence shows pretty clearly that McKee did have a spell of sickness in. the fall of 1893, and that he was not sick in the fall of 1894. Also the letters, taken in connection with the preceding and succeeding letters and circumstances, do not fit into the year 1894, but do fit into the correspondence of the preceding year. It is unnecessary to determine here as to whether or not these changes were fraudulent to the extent contended for by the defendants; but certainly, if the changes were fraudulent in the way which has been indicated above, for the purpose of making a case for complainants, no court of equity would grant the complainants any relief. They must come into a court of equity with clean hands; and if they come with papers forged for the purpose of making a case, certainly they would have no standing in court. But, independently of this, with these letters out of the case as of the dates they now bear, the evidence is overwhelming to my mind that there was an abandonment of the option on these lands by Harton in the early part of 1894, and in December, 1894, his desire is, evidenced by his letter of that date, to reopen the negotiations with McKee; not on the old option, but in order to make some new contract with him; not·to buy the lands himself either, but rather to make a sale of the lands for McKee to another party. It is unnecessary, in this view of the matter, to discuss further the facts of this case, except to say that it is not denied that in September, 1894, McKee made a new option on the lands for $25,000 to one E. T. Williams, in connection with whom Moore was acting in the purchase of the lands in 1895. It could hardly be that McKee, if he thought his option to Harton for the sale of these lands was of any force still, would have made an agreement to sell to Moore for $25,000. Indeed, in January subsequently he sold the lands to Moore and his associates for $18,000, when Harton claims that he was present on the ground, ready to pay him $30,000. It is contended on behalf of complainants, as a matter of law, that, even if there was an apparent abandonment by Harton of his rights under the option from McKee, Harton was entitled to notice from McKee that he considered the option and the trade as at an end before he, McKee, would have the right to sell the lands to any one else. While this might be true in some cases, I am satisfied that it is not applicable to the facts here. I think that, leaving the two con-

tested letters out of the case as of the dates the complainants desire to use them, there is such clear abandonment by Harton of all rights under his option as would render it unnecessary for McKee to give him any notice whatever.

Many questions have been raised and discussed in this case, which have not been referred to, and which it is deemed unnecessary to mention in the view taken of the case. My conclusion is that complainants are not entitled to any relief, and that the bill must be dismissed, with costs.