T. H. BACON v. JOHN EARLY, Defendant, and SUSAN
STONER, Intervener, Appellants.

**Execution Sale:**   PURCHASE BY CO-SURETY.   Where execution had
been levied on two ·lots to satisfy a forfeited appearance bond,
and upon the assurance of S., the owner of one lot, that the
full amount of the judgment and costs would be bid for the
other lot, the sale of S.'s lot was postponed, S. having signed
the bond upon the promise of E., the other signer, who owned
the other lot, that he would keep him harmless, there is no
reason why S. might not bid at the sale of E.'s lot, even if it
resulted in satisfying the judgment against him.

PETITION TO QUIET TITLE:  *Is notice to purchaser.*  Where an execu-
tion sale of realty took place after the filing of the petition
in an action to quiet title to the land, a purchaser at sale is
chargeable with notice of claim to the property stated in such
petition.

**Equity:**  *Relief against unlawful agreement.*   Plaintiff, to consti-
tute defendant a freeholder, so as to enable him to sign appear-
ance bonds for pay, to be divided between them, transferred
to defendant a lot which was transferred by an un-
recorded deed.   This later deed was returned to de-
fendant to enable him to quiet the misgivings of the clerk, and
was retained by him.   The lot was sold on execution issued on
a judgment on a forfeited appearance bond.   Prior to the sale,

plantiff sued to quiet his title. *Held,* that equity will not give palintiff relief from a situation which was the direct result of his own unlawful agreement with defendant.

*Appeal from Polk District Court.*—HON. C. A. BISHOP, Judge.

TUESDAY, MAY 13, 1902.

ACTION to quiet title in a certain lot. The issues raised by the answer and the petition of intervention by Susan Stoner present the questions decided. Decree was entered for plaintiff, and both defendant and intervener appeal.—*Reversed.*

*Lemuel Kinkead* and *I. E. Williamson* for appellants.

*Bowen & Brockett* and *Howe & Miller* for appellee.

LADD, C. J.—According to his own testimony, the plaintiff entered into a scheme, for gain, to enable the defendant, Early, through deceit and perjury, to traffic in appearance bonds for profit. Early was without property, and, to enable him to qualify as a freeholder, he entered into an arrangement with Bacon under the terms of which lot 19, block 5, in North Oak Park of Des Moines, was conveyed to the former in August, 1898, the deed recorded, and an abstract furnished him by Bacon, exhibiting perfect title in Early, for the purpose of proving to court officials that Early was owner of the property. At the same time, the latter and his wife executed a deed to Bacon, which, according to the agreement, was withheld by the grantee from record. The price received by Early for the execution of bonds was to be divided between them. Several bonds were signed as surety under this arrangement, and part of the compensation received turned over to the plaintiff. Later the deputy clerk of court learned of the unrecorded deed, and refused to accept Early as surety. To meet

this objection the plaintiff allowed Early to take this deed to exhibit to the deputy as proof that the property was not Bacon's, and that title was in Early. This was done, and Early was subsequently accepted as surety on several appearance bonds, and finally on that of Bessie Berry, January 28, 1899. On all of these he qualified as absolute owner of the lot. The last bond was forfeited February 7, 1899, and the judgment entered against the sureties. Early had failed to return the deed to Bacon after exhibiting it to the deputy clerk, and on the eighteenth of February, 1899, this action to quiet title in plaintiff as against him was begun. The evidence shows that Stoner, the husband of intervener, was induced to sign by Early's promise to keep him harmless, and a part of the price of $20 paid to him. Early also claims to have paid plaintiff his share, but this is denied by Bacon, who insists that he knew nothing of it. The parties also disagree as to whether bonds were to be signed only on Bacon's consent, or the defendant to act upon his own judgment. In our view of the case the details of the scheme are not important, save as characterizing its general purpose. Execution was issued on the judgment, and levied upon property of Stoner, and also on lot 19, as belonging to Early, and each advertised for sale. Upon the assurance of Stoner that the full amount of the judgment and costs would be bid for the lot, the sale of the other property was, by agreement of himself and the county attorney, postponed. Susan Stoner bid in the lot for the amount as promised, and received a certificate of sale. The evidence fails to show that this was done in the interest of Early, or as a result of collusion with him. The witness so testifying was thoroughly discredited. Apparently it was done to carry out Early's promise to keep Stoner harmless. The latter acted as agent of his wife, Susan Stoner, and she is undoubtedly chargeable with the knowledge he had. But it does not follow that he was the real purchaser of the lot. He had the perfect right to give her money, which the evidence shows he did, and with part of it, at her

direction, buy the lot for her at the sheriff's sale. Even if the purchase was for Stoner, we know of no reason why he might not freely bid, even if this resulted in satisfying the judgment against him. In any event the sale took place August 26, 1899, long after the plaintiff's petition had been filed, and hence the purchaser at the sale is chargeable with notice of the claim stated in such petition. *Rider v. Kelso,* 53 Iowa, 367. But the plaintiff is not in a situation to demand any aid of a court of equity. He has not come into court with clean hands. Having conveyed the lot to Early to enable him, by deceit, to perpetrate a fraud on the officers of the county, and returned the deed to him to promote that design, he will not now be heard to complain because the rogue he trusted violated that traditional honor said to exist among people of a class not necessary to be mentioned. His present situation was assumed for the express purpose of enabling Early to qualify as surety, and to induce his acceptance as such, and, now that precisely what was to be anticipated has happened, *i. e.,* judgment of forfeiture against Early, it is not perceived on what theory his appeal for help can reach the conscience of the court. Equity will not trouble itself to aid a wrongdoer, and especially when overtaken by so just a retribution as in this case.—REVERSED.