CHARLES L. CLICKNER, petitioner,

*v.*

ELLA G. CLICKNER, defendant.

[Decided January 22d, 1924.]

1. Annulment of marriage on the ground of fraudulent concealment of pregnancy will not be decreed where the evidence does not disprove the possibility that the husband had ante-nuptial knowledge of facts sufficient to put him on his guard against the contingency of existing pregnancy.

2. Where a suitor in equity has been guilty of false or misleading testimony and conduct in the prosecution and hearing of his cause his suit will be dismissed irrespective of whether or not he might otherwise be entitled to relief upon what the court finds from all the evidence to be the true facts material to the determination of the cause.

On final hearing.

*Mr. John M. Cody,* for the petitioner.

*Mr. Leon E. Cone,* for the defendant.

BUCHANAN, V. C.

The suit is by the husband for annulment of marriage on the ground of fraud, consisting in the concealment by de-

fendant of the fact that she was pregnant by another man. The defense is a denial of the alleged concealment—defendant claiming that she made full disclosure at the time petitioner asked her to marry him. There is an additional defense of ratification, which raises some interesting questions under the proofs, but these need not here be considered.

It appears that the pair first became really acquainted with each other in the latter part of December, 1921, were married February 22d, 1922, and that a child was born of defendant July 14th, 1922. The defendant admits that petitioner was not the father of the child and that she knew that she was pregnant at the time of the marriage contract.

Assuming that these facts so admitted by her are duly proven and corroborated (for although this suit is not under the statute but addressed to the general equity jurisdiction of the court, the same rules and practice apply. See *P. L. 1916 p. 109*), nevertheless the burden still rests upon petitioner to prove the concealment by at least a preponderance of the evidence, for that is the gravamen of his suit. It is not the pregnancy which is ground for annulment, but the fraudulent concealment thereof.

On this issue (as to concealment) he testifies that she did not inform him of her condition and he did not know of it until March 13th, 1922, when she became ill (apparently due to her pregnant condition), and his testimony as to the occurrences on that day (which is fully and thoroughly corroborated by his mother's testimony), is quite incompatible with a prior knowledge on his part. His mother, as a witness, made a very favorable impression upon me; her credibility was not assailed and she is contradicted only by the wife. As against this testimony on behalf of petitioner, there is the testimony of the wife that she told petitioner, when he asked her to marry him, that she could not marry him or anyone because she was already pregnant as the result of a rape by her step-father, and that petitioner said that that would make no difference—he would provide a home for her and the child too. Taking her testimony throughout, it contains many inconsistencies and contradictions and it is perfectly obvious

that as to some things at least she testified falsely. But on this particular point she is supported by Dr. Brookman (the minister who married them), a man of evident and unquestioned integrity, education and intelligence—in short, a witness of the highest possible character.

It appears that the husband and wife went to see Dr. Brookman on March 15th (two days after the disclosure or occurrences of March 13th) to obtain his advice, and in the course of the conversation, he asked the husband if he had known of the matter before the marriage, to which the husband replied that he had, but had been so happy that he had not realized what it might mean. · Dr. Brookman was perfectly positive as to this question and answer, because he said such an attitude on the part of a husband so situated was so unusual and unexpected, and so commendable from his viewpoint that the incident stood out clearly in his recollection (It had happened less than two years ago.) There is no doubt in my mind but that this conversation and admission by the husband took place substantially as testified to.

Taking it *prima facie* therefore as an admission by the husband of ante-nuptial knowledge of the pregnancy, and weighing it against the apparent credibility of the testimony, given by the mother, it must be concluded, at the least, that petitioner has not sustained the burden of proof as to his allegation of concealment.

Consideration and analysis of the entire evidence leads me to the belief that in all probability the real truth of the matter is this: that defendant did not disclose to petitioner before marriage the fact of her pregnancy, but that she did disclose to him the fact that she had had previous sexual intercourse. Upon this hypothesis all of the evidence, including the false testimony, can be reconciled or explained.

The guilt of previous sexual intercourse would be much more apt to be overlooked by a person of the station in life of this petitioner (particularly in view of her story that it was rape by her step-father) than the fact of actual pregnancy and the likelihood of the birth of a child, not his own. to be supported and cared for by him. He might

very well have failed to contemplate or realize, from the mere confession of intercourse—especially if she did not tell him the date thereof, or that it had occurred only a few months previously—the possibility or risk of resultant conception and birth. Hence, his admission to Dr. Brookman that he had had knowledge before marriage but was so happy he didn't realize what it would mean—he having in mind his knowledge of her sexual intercourse, although Dr. Brookman meant his inquiry to refer to the knowledge of pregnancy. (It is obvious that such a misunderstanding might readily occur, especially in view of the natural tendency of a minister toward euphemism and avoidance of ugly detail in discussing matters of this kind, and Dr. Brookman's testimony is perfectly compatible with this theory.)

This also permits full credence to be given to the testimony of petitioner's mother—to whom the whole disclosure came as a surprise on March 13th—and full credence to all or most of the petitioner's testimony (and much of defendant's) as to the occurrences at that time, since he then sustained the surprise and shock and realization of the pregnancy, and reacted thereto almost, if not quite, precisely in the same manner and to the same degree as if he had not been previously told of her unchastity.

Further corroboration is afforded by his subsequent conduct. The wife says, and the husband specifically testifies likewise, that he told her that if she would put the child away in an institution and come back to him and be a true and faithful wife to him he would accept her as such. Moreover he says he would have taken her back if she had put the child in an institution, but that after the child was born she refused to give it up, and that the cause for his bringing the annulment suit "is her words to me on July 30th that she was through with me." These statements by him were evidently true—they were made by him on cross-examination and in a manner and under circumstances which preclude the idea that they were prepared or premeditated—and it is clear from all this that his repugnance was not toward his wife, but toward accepting paternal responsibility

for, and society with, a child of the other man. There is nothing in his whole testimony to show that he ever accused or reproached his wife as having failed to tell him that she had had prior sexual intercourse, which bears out the idea that she *had* told him that much.

The only evidence which is not on its face compatible with this theory is—first, the testimony of the wife that she did inform petitioner, before her marriage, that she was pregnant; and secondly, the testimony of the petitioner to the effect that she did not so inform him even of the fact of previous intercourse. It would seem, however, only logical to conclude, in view of the other evidence and the common knowledge of the frailities of human nature, that the testimony of each, in these particulars, is false, and was given because of their respective self-interests in the outcome of the suit and the impulse or desire on the part of each to put himself (herself) and his (her) conduct before the court and the public in the most favorable light.

Acceptance of this hypothesis (that there was pre-nuptial disclosure of the fact of prior sexual intercourse, but not of the fact of pregnancy) as the real truth of the facts involved, will not, however, result in the award of decree of annulment, and this for three reasons.

In the first place the petitioner has been guilty of an attempt fraudulently to impose upon the court—to induce the court to believe that defendant did not disclose to him the fact of her previous intercourse and that he entered into the marriage in the belief that she was chaste. I do not recall that he made a statement on the witness-stand squarely to that effect, but he does say so, squarely, in his petition, and it is also a necessary inference from his testimony as to the occurrences on March 13th. Moreover, he was asked if defendant had ever told him *"in any way whatever"* that she was going to be a mother, and he replied "No." This attempt to deceive the court was obviously made in the ·belief that it was necessary or advisable in making out his right to a decree, and for the purpose of endeavoring to obtain such decree. It seems to me therefore that denial of relief to petitioner

might well be rested upon that ground, somewhat akin to the ordinary application of the equitable principles which require a suitor for equitable relief to do equity and to come into court with clean hands.

In the second place, it is clear that for petitioner to be entitled to annulment in a case of this kind he must prove that the wife knew of the fact of her pregnancy. Without such knowledge on her part there could not be fraudulent concealment by her. The only proof of the fact that the wife knew of her pregnancy before marriage is the testimony and admission by the wife—a party to the suit. The requisite corroboration is lacking. It might be argued that in the ordinary course of nature the probability is that a woman *would* know of her pregnancy at a time when gestation was half complete, and that it would be extremely unlikely that a wife would admit that she had then known of her pregnancy, if that fact were not true, and that this should suffice for the necessary corroboration. But it is a matter of common knowledge that occasionally prospective mothers are unaware of their condition at points in the gestatory period even later than this, and (defendant's lack of credibility having already been noted) it might well be that she, although not in fact having known of her pregnancy at the time of the marriage, feared that this might not be believed and adopted the story that she did know, and did inform petitioner, as the more plausible one.

In the third place, I am of opinion that for a petitioner to succeed in a suit for annulment for the cause of fraudulent concealment of pregnancy, he must go further than merely to prove concealment of the fact of the pregnancy alone. He must show that he was ignorant that there had been sexual intercourse at a time so recent as to make it incumbent upon him to contemplate the possibility of a resultant existing pregnancy.

*Carris* v. *Carris, 24 N. J. Eq. 516,* although holding that fraudulent concealment of pregnancy is ground for annulment, does not contravene the view above expressed. Indeed, the opinion cites, with at least implied approval, the decision

in *Crehore* v. *Crehore, 97 Mass. 330,* where decree of annulment was denied on the ground that the husband had been informed of circumstances sufficient to put him on his guard against the possibility of pregnancy.

In the present case it is evident to my satisfaction that before the marriage the defendant informed petitioner of the fact, at least that she had had antecedent sexual intercourse. In view of this, it was necessary for him to prove at the very least, that she did not tell him either the date on which this intercourse had occurred, or that it had occurred within a time sufficiently recent to make it necessary to contemplate the possibility of a resultant child.

The petition must be dismissed.