## MAS v. COCA–COLA CO.
### No. 5582.

Circuit Court of Appeals, Fourth Circuit.

Aug. 20, 1947.

George A. Finch, of Baltimore, Md., for appellant.

Hilary W. Gans, of Baltimore, Md. (John A. Sibley, James M. Sibley, K. Wilson Corder, and Julius R. Lunsford, Jr., all of Atlanta, Ga., Brown & Brune, of Baltimore, Md., and Spalding, Sibley & Troutman, of Atlanta, Ga., on the brief), for appellee.

Before PARKER, SOPER, and DOBIE, Circuit Judges.

PARKER, Circuit Judge.

This is an appeal by plaintiff in a suit instituted under R.S.4915, 35 U.S.C.A. § 63, from an order dismissing the bill of complaint on the ground that plaintiff had not come into court with clean hands. The suit was one to have plaintiff adjudged entitled to a design patent on a beverage bottle

which the Board of Appeals in the Patent Office, on appeal in an interference proceeding, had awarded to one Kelly, who had assigned his rights to the Coca Cola Company. The finding that plaintiff did not come into court with clean hands was based upon the fact that he had used forged documents and perjured testimony in his attempts to establish priority of invention in the Patent Office.

The subject matter of the design patent was a beverage bottle which differed very little from the bottle, covered by a patent to one Root, which the Coca Cola Company had been using since 1923. The design of the patent in suit was distinguishable from that of the Root patent only by the addition of two short vertical ribs which divide the plain central portion of the design into two panels. Kelly, President of the Coca Cola Company, Ltd., of Canada, made application for a patent on this design March 24, 1937. On October 15, 1938, plaintiff applied for a patent on a design practically identical with that of Kelly, in so far as the vertical ribs are concerned, but providing in addition surface ornamentation resembling frost on other parts of the bottle. The similarity of the two designs could hardly have been accidental; for it is not reasonable to conclude that a design of such arbitrary character could have been hit upon by two persons independently at or about the same time. Orange-Crush Co. v. American Ornamental Bottle Corporation, 4 Cir., 60 F.2d 518, 520; Dowling v. Jones, 2 Cir., 67 F.2d 537, 539, 540. Plaintiff apparently recognized this self-evident proposition; and when an interference was declared in the Patent Office, he claimed not only priority of conception and reduction to practice, but also that he had made disclosure of his design to the Coca Cola Company in advance of the Kelly application. To prove the last contention, he introduced in evidence two letters purporting to be copies of letters written to the Coca Cola Company in his behalf in the year 1934 and three letters purporting to be written by an official of the Coca Cola Company acknowledging receipt of these letters and of a wooden bottle which he claimed to have submitted to the Coca Cola Company as a model of his design.

The Examiner in the Patent Office went fully into the facts and pointed out that the evidence offered to establish disclosure was entirely untrustworthy. Indeed the fraudulent nature of this evidence was so conclusively established before him that plaintiff expressly abandoned it before the Board of Appeals of the Patent Office. On the basis of the use which he had made of the evidence in the Patent Office, however, plaintiff was indicted in the District Court of the United States for the District of Columbia for filing a false deposition and for uttering forged documents. He was convicted on all counts of the indictment and was sentenced to a term of imprisonment, which was affirmed on appeal. Mas v. United States, 80 U.S.App.D.C. 223, 151 F.2d 32.

When the fraudulent and criminal conduct of plaintiff in attempting to establish priority in the Patent Office was called to the attention of the trial judge on the opening statements in the court below, he inquired fully into the matter. Plaintiff's counsel admitted that the copies of letters purporting to be from the Coca Cola Company which plaintiff filed in the Patent Office were not genuine; and the record in the Patent Office, which was before the court, justified the conclusion that the entire correspondence was fictitious and was fraudulently put forward by plaintiff for the purpose of deceiving and misleading the Patent Office on the issue of disclosure and priority, the very matters which plaintiff was putting in issue by his complaint and with respect to which he was asking that the decision of the Patent Office be reversed. Upon this being established, the trial judge held that plaintiff had not come into court with clean hands and dismissed the suit.

We think that the action of the court was thoroughly justified. The clean hands doctrine is one which the court applies, not for the protection of the parties, but for its own protection. Its basis was well stated by Professor Pomeroy (Equity Jurisprudence, 4th Ed., sec. 397) as follows: "It assumes that the suitor asking the aid of a court of equity has himself been guilty of conduct in violation of the fundamental

conceptions of equity jurisprudence, and therefore refuses him *all* recognition and relief with reference to the subject-matter or transaction in question. It says that whenever a party, who, as *actor* seeks to set the judicial machinery in motion and obtain some remedy, has violated conscience, or good faith, or other equitable principle, in his prior conduct, then the doors of the court will be shut against him in limine; the court will refuse to interfere on his behalf, to acknowledge his right, or to award him any remedy." Another passage by this authoritative writer on equity jurisprudence, thus states the rule (Sec. 404): "It is not alone fraud or illegality which will prevent a suitor from entering a court of equity; any really unconscientious conduct, connected with the controversy to which he is a party, will repel him from the forum whose very foundation is good conscience."

■■ It is well settled, of course, that the court will not close its doors in the face of a suitor, if the misconduct of which he has been guilty is not related to the equity which he seeks to enforce. Loughran v. Loughran, 292 U.S. 216, 54 S.Ct. 684, 78 L. Ed. 1219. In this case, however, the equity which plaintiff asks is that he be accorded priority of invention; and his misconduct had relation to this very matter. The fraud of which he has been guilty may properly be said to affect the very cause of action which he asserts, since the issue as to priority of invention is inextricably interwined with that of disclosure to the Coca Cola Company, as to which plaintiff is still relying upon the letters to that company found to be fraudulent, although not upon the alleged replies thereto, which are conceded to be forgeries. Cf. Harton v. McKee, C. C., 73 F. 556, 558. It should not be overlooked that plaintiff, to establish disclosure, which is the heart of his cause of action, is still relying in his brief before us on the copies of letters to the company which were found by the Examiner not to be trustworthy, which with the replies thereto were the basis of the prosecution in which plaintiff was convicted of forgery and perjury, and which plaintiff deemed it necessary to support with the replies which he now admits to be forgeries. Surely a court of equity is not required to give consideration to a cause of action the very essence of which is infected with fraud of this character.

■■ Although most cases in which the clean hands doctrine has been applied are cases in which the cause of action itself has arisen out of or been the fruit of unconscionable conduct, we do not understand that it is a prerequisite to the application of the doctrine that the cause of action shall have so arisen. It is sufficient to bar relief that plaintiff has been guilty of unconscionable conduct directly related to the cause of action, such as the fabrication of testimony, the subornation of perjury or other like attempt to perpetrate a fraud upon the court or take an unconscionable advantage of his adversary. It is said that to have relief from a court of equity plaintiff must not only come into court with clean hands, but must keep his hands clean.* In this case, plaintiff is in the position of asking the court to grant him, on the ground of priority of invention, a patent which the Patent Office denied, and of having to admit at the opening of his case that by perjury and forgery he had attempted to perpetrate a fraud on the Patent Office with respect to that very issue. Surely a court of equity, which is a court of conscience, is not required to listen to a suitor who has placed himself in such a position with respect to the very matter that he is bringing before the court.

Very much in point, we think, is the decision of the Supreme Court in Keystone Driller Co. v. General Excavator Co., 290 U.S. 240, 54 S.Ct. 146, 147, 78 L.Ed. 293.

---

* Kem Products Co. v. Levin, 117 N. J.Eq. 560, 177 A. 77; Holland v. Brown, Tex.Civ.App., 66 S.W.2d 1095; Zearfoss v. Zearfoss, 112 N.J.Eq. 530, 164 A. 893; Pfender v. Pfender, 104 N.J.Eq. 107, 144 A. 333; Bush v. Gaffney, Tex. Civ.App., 84 S.W.2d 759; Gluck v. Rynda Development Co., 99 N.J.Eq. 788, 134 A. 363, affirmed 100 N.J.Eq. 554, 135 A. 917; Income Investors, Inc., v. Shelton, 3 Wash.2d 599, 101 P.2d 973; Clickner v. Clickner, 95 N.J.Eq. 479, 123 A. 373; Van Voorhis v. Van Voorhis, 94 Mich. 60, 53 N.W. 964; Bacon v. Early, 116 Iowa 532, 90 N.W. 353; Roman v. Mali, 42 Md. 513, 521.

In that case plaintiff, grantee of a patent, had been guilty of suppression of evidence of prior use in an infringement suit in which the validity of the patent was involved. In a subsequent infringement suit this misconduct with respect to the subject matter of the litigation was held to bar relief under the clean hands doctrine. The court said:

"But courts of equity do not make the quality of suitors the test. They apply the maxim requiring clean hands only where some unconscionable act of one coming for relief has immediate and necessary relation to the equity that he seeks in respect of the matter in litigation. They do not close their doors because of plaintiff's misconduct, whatever its character, that has no relation to anything involved in the suit, but only for such violations of conscience as in some measure affect the equitable relations between the parties in respect of something brought before the court for adjudication. Story, id., § 100. Pomeroy, id., § 399. They apply the maxim, not by way of punishment for extraneous transgressions, but upon considerations that make for the advancement of right and justice. They are not bound by formula or restrained by any limitation that tends to trammel the free and just exercise of discretion."

"In the latter case of Hazel-Atlas Glass Co. v. Hartford-Empire Co., 322 U.S. 238, 64 S.Ct. 997, 1003, 88 L.Ed. 1250, a patentee had fraudulently caused an article written by one of its attorneys to be published as that of a disinterested person and had relied upon it in the Patent Office and later in the argument of an infringement suit in the Circuit Court of Appeals, 3 Cir., 59 F.2d 399. The Supreme Court held that in proper application of the clean hands doctrine, the patentee should be denied all relief by the courts. The court said:

"Had the District Court learned of the fraud on the Patent Office at the original infringement trial, it would have been warranted in dismissing Hartford's case. In a patent case where the fraud certainly was not more flagrant than here, this Court said: 'Had the corruption of Clutter been disclosed at the trial * * *, the court undoubtedly would have been warranted

in holding it sufficient to require dismissal of the cause of action there alleged for the infringement of the Downie patent.' Keystone [Driller] Co. v. General Excavator Co., 290 U.S. 240, 246, 54 S.Ct. 146, 148, 78 L.Ed. 293; cf. Morton Salt Co. v. G. S. Suppiger Co., supra, 314 U.S. at pages [488] 493, 494, 62 S.Ct. at pages 405, 406, [402], 86 L.Ed. 363. So, also, could the Circuit Court of Appeals have dismissed the appeal had it been aware of Hartford's corrupt activities in suppressing the truth concerning the authorship of the article. The total effect of all this fraud, practiced both on the Patent Office and the courts, calls for nothing less than a complete denial of relief to Hartford for the claimed infringement of the patent thereby procured and enforced."

In Precision Instrument Mfg. Co. v. Automotive Maintenance Machinery Co., 324 U.S. 806, 65 S.Ct. 993, 997, 89 L.Ed. 1381, plaintiff had settled an interference proceeding in the Patent Office, with knowledge or reasonable ground for belief that there was perjury in the papers filed as basis for the granting of the patent. In holding that plaintiff should be denied relief under the clean hands doctrine, the Court said:

"The guiding doctrine in this case is the equitable maxim that 'he who comes into equity must come with clean hands.' This maxim is far more than a mere banality. It is a self-imposed ordinance that closes the doors of a court of equity to one tainted with inequitableness or bad faith relative to the matter in which he seeks relief, however improper may have been the behavior of the defendant. That doctrine is rooted in the historical concept of court of equity as a vehicle for affirmatively enforcing the requirements of conscience and good faith. This presupposes a refusal on its part to be 'the abetter of inequity.' Bein v. Heath, 6 How. 228, 247, 12 L.Ed. 416. Thus while 'equity does not demand that its suitors shall have led blameless lives,' Loughran v. Loughran, 292 U.S. 216, 229, 54 S.Ct. 684, 689, 78 L.Ed. 1219, as to other matters, it does require that they shall have acted fairly and without fraud or deceit as to the controversy in issue."

Plaintiff does not question that his fraudulent conduct would be sufficient

ground for the application of the clean hands doctrine in an ordinary equity suit, but contends that that doctrine may not be applied in a suit under R.S.4915 to review a decision of the Patent Office, and that, at all events, the trial court should have heard his evidence as to fraudulent conduct on the part of the defendant Coca Cola Company and weighed it against the fraudulent conduct of plaintiff. We think that there is nothing in either contention. As to the first, it is true that the statute, R.S.4915, provides in effect for a review of decisions in the Patent Office; but it is true also that the remedy provided is by "bill in equity", and the necessary inference is that Congress intended that this equitable remedy, with its incidents and limitations as established in the equity practice, should be the one to be followed in obtaining the review provided. It means "a proceeding in a court of the United States having original equity jurisdiction under the patent laws, according to the ordinary course of equity practice and procedure. It is not a technical appeal from the patent-office, like that authorized in section 4911 [35 U.S.C.A. § 59a], confined to the case as made in the record of that office, but is prepared and heard upon all competent evidence adduced, and upon the whole merits." Butterworth v. United States, 112 U.S. 50, 61, 5 S.Ct. 25, 31, 28 L.Ed. 656; In re Squire, Fed.Cas.No.13,269.

Plaintiff's position as to this, however, even if correct, would be of no help to him. The proceedings in the Patent Office were quasi-judicial in character (Butterworth v. United States, supra); and a fraudulent attempt by forgery and perjury to pervert the course of justice therein would justify denial of a patent to plaintiff at any stage of the proceedings. As said by the Supreme Court: "A patent by its very nature is affected with a public interest. As recognized by the Constitution, it is a special privilege designed to serve the public purpose of promoting the 'Progress of Science and useful Arts.' At the same time, a patent is an exception to the general rule against monopolies and to the right to access to a free and open market. The far-reaching social and economic conse-

quences of a patent, therefore, give the public a paramount interest in seeing that patent monopolies spring from backgrounds free from fraud or other inequitable conduct and that such monopolies are kept within their legitimate scope." Precision Instrument Mfg. Co. v. Automotive Maintenance Machinery Co. 324 U.S. 806, 816, 65 S.Ct. 993, 998, 89 L.Ed. 1381. In Ex parte Mallard, Official Gazette, United States Patent Office, vol. 593, p. 143, this decision was applied by the Commissioner of Patents to deny a patent because of the fraud of the applicant in giving false testimony and in changing dates on exhibits in the Patent Office. He who comes in to the Patent Office seeking a monopoly under the law from the people of the United States must not only have clean hands with respect to the matter as to which he seeks relief, but he must keep his hands clean with respect thereto. No man should be granted a patent where his conduct has been such that any grant to him will be clouded with forgery and perjury or fraud practiced upon the Patent Office; and where it appears, at any stage of the proceedings, that an applicant has been guilty of conduct of this sort, he should be denied all further relief. If this is a proper rule, as we think it is, to be applied by the Patent Office, a fortiori it is a proper rule to be applied by a court reviewing a patent office decision.

Plaintiff insists that he is entitled to relief notwithstanding his fraudulent conduct because he says that the defendant Coca Cola Company also was guilty of fraud and unlawful conduct; and he contends that the court should have heard the evidence and weighed the respective guilt of the parties. There is nothing in this contention. It was sufficiently answered by the Supreme Court in the paragraph above quoted from Precision Instrument Mfg. Co. v. Automotive Maintenance Machinery Co., where that court says that the doors of a court of equity are closed to one tainted with inequitableness or bad faith relative to the matter in which he seeks relief, "however improper may have been the behavior of the defendant." And later in the opinion, after saying that plaintiff, Automotive, had not displayed that stand-

ard of conduct requisite to the maintenance of the suit in equity, it added as to the defendants, "that the actions of Larson and Precision may have been more reprehensible is immaterial."

■ Heath v. Frankel, 9 Cir., 153 F.2d 369 and other cases upon which plaintiff relies are not in point. In the Heath v. Frankel case, the question was not one of barring plaintiff from court because of misconduct, but of holding an invalid patent to be valid because of misconduct of defendant in presenting certain evidence of prior use. In other cases relied on it is held that the rule of unclean hands is not inexorable and is not to be applied where an inequitable result would be reached. See Goodyear Tire & Rubber Co. v. Overman Cushion Tire Co., 6 Cir., 95 F.2d 978, 983; Leo Feist, Inc., v. Young, 7 Cir., 138 F.2d 972, 975. This, however, is but to recognize that the application of the clean hands doctrine is a matter resting in the sound discretion of the court, which is "not bound by formula or restrained by any limitation that tends to trammel the free and just exercise of discretion." Keystone Driller Co. v. General Excavator Co., 290 U.S. 240, 245, 246, 54 S.Ct. 146, 148, 78 L.Ed. 293.

■ There is nothing here to indicate that the discretion of the court below was not soundly exercised. If the clean hands doctrine is not to be applied to bar a plaintiff who has been guilty of perjury and forgery in an attempt to practice a fraud on the Patent Office, where he comes into court claiming that the Patent Office has wrongfully decided against him the issue with respect to which these were employed, it is hard to imagine a case in which the doctrine would properly be invoked. No court of equity ought to be required to listen to a man whose very presence suggests danger to the administration of justice and whose past conduct affecting the matter in litigation would cast doubt upon the ability of the court to ascertain from him the truth with respect thereto.

We are not passing upon the validity of the patent nor the conduct of the defendant Coca Cola Company, its officers, attorneys or employees. If the Coca Cola Company should ever come into court to protect the patent, these questions could then be raised and passed upon. If the patent is invalid for any reason, the court will then say so; and, if the Coca Cola Company has been guilty of fraud in obtaining it, that company may find the door of the court closed in its face, just as the plaintiff has found it; but these are not questions to be raised by plaintiff, who has come into court with his own fraud smelling to high heaven. What we are deciding, and all that we are deciding, is that the court below was acting within the proper exercise of a sound discretion in refusing to hear the case of a man who came into court admitting that he had been guilty of forgery and perjury in an attempt to perpetrate a fraud with respect to the very matter as to which he was asking relief.

Affirmed.