Jesse E. HALL, Plaintiff, and Weatherford Oil Tool Company, Inc., a Texas corporation; Weatherford Spring Company of Venezuela, C. A., a Venezuelan corporation; Hall Development Company, C. A., a Venezuelan corporation; Weatherford, Ltd., a corporation of the Province of Alberta, Canada; Weatherford Internacional, S.A. de C.V., a corporation of Mexico; Nevada Leasehold Corporation, a Nevada corporation; Parker Industrial Products, Inc., a Texas corporation, Plaintiff-Interveners,

v.

Kenneth A. WRIGHT, Roland E. Smith, B & W, Inc., a California corporation, Adams-Campbell Co., Ltd., a California corporation; and California Spring Co., Inc., a California corporation, Defendants.

Civ. No. 7839.

United States District Court
S. D. California, Central Division.

Sept. 17, 1954.

Thomas E. Scofield, Kansas City, Mo., and Philip Subkow, Los Angeles, Cal., for plaintiff and plaintiff-interveners.

Lyon & Lyon, Lewis E. Lyon, and Richard F. Lyon, Los Angeles, Cal., for defendants and counterclaimants.

MATHES, District Judge.

After a partial trial of the issues raised by the original pleadings, both sides were permitted to file amended and supplemental pleadings and new parties were brought in. Fed.Rules Civ.Proc. Rules 15, 21, 24, 28 U.S.C.A.

The case then proceeded to trial upon the issues raised by: (1) the second amended complaint for (a) reformation and cancellation of, damages for breach of, and a declaratory judgment as to rights and duties under, an alleged con-

tract dated September 15, 1944 between plaintiff Jesse E. Hall and defendant Kenneth A. Wright, (b) treble damages for alleged violations of the antitrust laws, (c) damages and injunctive relief for alleged unfair competition, and (d) an accounting; (2) the "Answer of defendants Roland E. Smith, Adams-Campbell Co., Ltd., and California Spring Co., Inc.", and (3) the "Answer and Counterclaims of defendants Kenneth A. Wright and B. & W., Inc. to the Second Amended Complaint."

Plaintiff invoked the jurisdiction of this court upon the ground of diversity of citizenship, see 28 U.S.C. §§ 1332, 2201–2202, and under the Sherman and Clayton Acts, see 15 U.S.C.A. §§ 1–3, 15, 26.

While plaintiff and plaintiff-interveners were presenting evidence upon their case-in-chief, the parties reached a stipulation for partial judgment declaring that the alleged agreement of September 15, 1944 never constituted a contract between the parties Hall and Wright, and dismissing with prejudice: (a) all causes of action asserted against defendants Roland E. Smith, Adams-Campbell Co., Ltd. and California Spring Co., Inc., (b) all causes of action other than that for unfair competition asserted against defendants Wright and B & W, Inc., and (c) the counterclaims asserted by defendants Wright and B & W, Inc., for damages for alleged violations of the antitrust laws and for declaratory relief.

The trial then continued upon the issues raised by: (1) the fifth cause of action asserted in the second amended complaint grounded upon alleged unfair competition, and (2) the counterclaims of defendants Wright and B & W, Inc., for unfair competition and for alleged infringement of (a) Letters Patent No. 2,338,372 ["Method for Conditioning Well Bores"], issued January 4, 1944 to defendant Wright and later assigned to defendant B & W, Inc., (b) Letters Patent No. 2,374,317 ["Well Production Equipment"—wall cleaning guide], issued April 24, 1945 to defendant Wright

and later assigned to defendant B & W, Inc., and (c) Letters Patent No. 2,392,-352 ["Method of Placing Cement Plugs in Well Bores"], issued January 8, 1946 to defendant Wright and later assigned to defendant B & W, Inc., and (3) the reply of plaintiff and plaintiff-interveners to these counterclaims.

Near the close of the trial, Letters Patent No. 2,671,515 ["Well Bore Cleaning Scratcher"], issued to plaintiff Jesse E. Hall on March 9, 1954. Since the claimed invention covered by this patent and the Patent-Office proceedings upon the application had previously been the subject of extended testimony in the case, leave was granted plaintiff Hall to file an amendment supplementing the second amended complaint by adding thereto as the "Seventh Cause of Action" a claim against defendants Wright and B & W, Inc. for alleged infringement of this newly-issued Hall patent.

Defendants Wright and B & W, Inc., filed a supplemental answer denying infringement, with a counterclaim against plaintiff and plaintiff-interveners for a declaratory judgment that Letters Patent No. 2,671,515 to Hall "are invalid and void as to each and all of the claims thereof." Plaintiff and plaintiff-interveners filed a reply to this counterclaim.

The trial then proceeded and, upon conclusion, the case was submitted for decision upon the issues raised by the amended and supplemental claims and counterclaims for unfair competition, patent infringement, and declaratory relief.

Among the acts of unfair competition claimed by plaintiff and plaintiff-interveners is the allegation that defendants Wright and B & W, Inc., both before and during the pendency of this litigation, have unfairly and without cause notified customers of plaintiff and plaintiff-interveners that the customers infringed the monopoly of the Wright Method Patent No. 2,338,372 by the use of scratchers in the cementing operations incident to completion of oil wells.

■ The evidence sustains the charge, since it is clear that the notices were given, directly and indirectly, without any intent that the notices serve as a preliminary to suit. Moreover, the notices were not given in good faith since Patent No. 2,338,372 does not teach or claim or even mention any method of carrying on the cementing operations incident to the completion of an oil well. Cf. Morton Salt Co. v. G. S. Suppiger Co., 1942, 314 U.S. 488, 62 S.Ct. 402, 86 L.Ed. 363; B. B. Chemical Co. v. Ellis, 1942, 314 U.S. 495, 62 S.Ct. 406, 86 L.Ed. 367; Schriber-Schroth Co. v. Cleveland Trust Co., 1940, 311 U.S. 211, 312 U.S. 654, 61 S.Ct. 235, 85 L.Ed. 132; Dehydrators Ltd. v. Petrolite Corp., 9 Cir., 1941, 117 F.2d 183; Celite Corp. v. Dicalite Co., 9 Cir., 96 F.2d 242, certiorari denied, 1938, 305 U.S. 633, 59 S.Ct. 101, 83 L. Ed. 407; Circle S Products Co. v. Powell Products, 7 Cir., 1949, 174 F.2d 562; Metro-Goldwyn-Mayer Corp. v. Fear, 9 Cir., 1939, 104 F.2d 892; Adriance Platt & Co. v. National Harrow Co., 2 Cir., 1903, 121 F. 827.

On the other hand, among the acts of unfair competition claimed by defendants Wright and B & W, Inc. is the allegation that plaintiff and plaintiff-interveners, during the pendency of this action, have notified the trade, "without probable cause, that they were entitled to an accounting from the trade for all Multiflex and Nu-Coil scratchers which the trade purchased from B & W, Inc., and that they were entitled to a royalty of $2.50 per scratcher from the trade for each Multiflex and Nu-Coil scratcher purchased by the trade."

The evidence also sustains this charge, since it is clear that the notices were given without any intent that the notices serve as a preliminary to suit. Here, too, the notices were not given in good faith; a royalty of $2.50 per $8 scratcher would not be within the bounds of economic reason.

■ These and other claims of unfair trade practices are asserted, each side against the other, with each invoking the equity jurisdiction of this Court. Briggs v. United Shoe etc. Co., 1915, 239 U.S. 48, 50, 36 S.Ct. 6, 60 L.Ed. 138; Rees v. Watertown, 1873, 19 Wall. 107, 86 U.S. 107, 122, 22 L.Ed. 72 upon the ground of diversity of citizenship. 28 U.S.C. § 1332. Hence the substantive law of California governing tortious conduct commonly referred to as unfair competition—unfair trade practices—is to be applied. Pecheur Lozenge Co. v. National Candy Co., 1942, 315 U.S. 666, 667, 62 S.Ct. 853, 86 L.Ed. 1103; Fashion Originators Guild v. Federal Trade Commission, 1941, 312 U.S. 457, 468, 61 S.Ct. 703, 85 L.Ed. 949; Franke v. Wiltschek, 2 Cir., 1953, 209 F.2d 493, 494; Cridlebaugh v. Rudolph, 3 Cir., 131 F.2d 795, certiorari denied, 1942, 318 U.S. 779, 63 S.Ct. 855, 87 L.Ed. 1147; Zephyr American Corp. v. Bates Mfg. Co., 3 Cir., 1942, 128 F.2d 380.

Section 3369 of the Civil Code of California provides in part that: "Any person performing or proposing to perform an act of unfair competition within this State may be enjoined in any court of competent jurisdiction. * * * unfair competition shall mean and include unfair or fraudulent business practice and unfair, untrue or misleading advertising * * *."

■■ Use of the phrase "shall mean and include" indicates that the statutory definition was not intended to be restrictive or exclusive. Athens Lodge No. 70 v. Wilson, 1953, 117 Cal.App.2d 322, 255 P.2d 482. It is left to the courts to determine what conduct will constitute unfair competition in a particular case. Schwartz v. Slenderella Systems of California, Cal.App.1953, 260 P.2d 256 [hearing granted, see Cal.Sup., 271 P.2d 857]; MacSweeney Enterprises Inc. v. Tarantino, 1951, 106 Cal.App.2d 504, 235 P.2d 266.

While this litigation has been pending the businesses of the parties on both sides in the sale of scratchers for use in oil well cementing operations has grown rapidly and has spread to the oil producing sections of Mexico and Ecuador to

the south and Canada to the north. Accompanying this growth, intensity of competition has increased and with it the unfair methods employed by both sides to influence the trade. A dozen or more suits involving one phase or another of their controversies have been commenced in Texas, Louisiana, Canada, Mexico and Venezuela, by plaintiff Hall or one of the interveners or both, against B & W, Inc. and Wright or one of them and one of the customers of B & W, Inc. Cf. Virtue v. Creamery Package Co., 1913, 227 U.S. 8, 33 S.Ct. 202, 57 L.Ed. 393; Crosley Corp. v. Hazeltine Corp., 3 Cir., 1941, 122 F.2d 925, certiorari denied, 1942, 315 U.S. 813, 62 S.Ct. 798, 86 L.Ed. 1211.

And defendants Wright and B & W, Inc. have not been idle. In addition to opposing Hall at every permissible stage and by every permissible proceeding in the United States Patent Office, they caused to be organized "Scratchers, Inc.", a Nevada corporation, and caused it to acquire legal title to the Black Patent No. 2,151,416 and to file three suits in Texas and Oklahoma against one of plaintiff-interveners or one of their customers alleging infringement of the Black patent.

Much of this litigation was commenced to serve as a basis for sales propaganda to the trade in the state or country where filed. Each side employed practiced techniques of their own to influence the placing of business by the larger oil producing companies. Such techniques involved everything from veiled threat to adroit suggestion in an effort to cause the oil companies to feel more secure patent-infringement wise if they would direct their business to one side or the other.

In brief it appears that suits filed in this and other courts were tried primarily to the trade. See: Gerosa v. Apco Mfg. Co., 1 Cir., 1924, 299 F. 19, 26; Panay Horizontal Show Jar Co. v. Aridor Co., 7 Cir., 1923, 292 F. 858; Luten v. Wilson Reinforced Concrete Co., 8 Cir., 1920, 263 F. 983. While pretending to look to this court of equity for justice, each side set about through myriad methods of self-help to make their own justice.

■ It is the age-old policy of courts of equity to require that he who sues seeking equity must not only come into court with "clean hands" as respects the controversy, but must continue to keep "clean hands" as to the controversy throughout the pendency of the litigation. Thus the "clean hands" doctrine tends to overlap the field of the maxim that "He who seeks equity must do equity."

The rule is well expressed by Judge Soper in Root Refining Co. v. Universal Oil Products Co.: "No principle is better settled than the maxim that he who comes into equity must come with clean hands and keep them clean throughout the course of the litigation, and that if he violates this rule, he must be denied all relief whatever may have been the merits of his claim." 3 Cir., 169 F.2d 514, 534–535, certiorari denied, Universal Oil Products v. William Whitman Co., 1948, 335 U.S. 912, 69 S.Ct. 481, 93 L.Ed. 444; see also: Precision Instrument Mfg. Co. v. Automotive Co., 1945, 324 U.S. 806, 65 S.Ct. 993, 89 L.Ed. 1381; Hazel-Atlas Glass Co. v. Hartford Empire, Co., 1944, 322 U.S. 238, 64 S.Ct. 997, 88 L.Ed. 1250; Morton Salt Co. v. G. S. Suppiger Co., supra, 314 U.S. at pages 492–494, 62 S.Ct. 406; Keystone Driller Co. v. General Excavator Co., 1933, 290 U.S. 240, 245, 54 S.Ct. 146, 78 L.Ed. 293; Mas v. Coca-Cola Co., 4 Cir., 1947, 163 F.2d 505, 508; American Ins. Co. v. Scheufler, 8 Cir., 129 F.2d 143, 148, certiorari denied, 1942, 317 U.S. 687, 63 S.Ct. 257, 87 L.Ed. 551; Rollman Mfg. Co. v. Universal Hdw. Works, 3 Cir., 1916, 238 F. 568, 570.

■ As Judge Stone explained in American Ins. Co. v. Lucas: "In applying the maxim requiring equity from one seeking equity the court is concerned primarily with the rights and duties of the parties inter sese. In applying the 'clean hands' maxim the court is

concerned primarily with protecting its own integrity from improper action by a party. The former arises upon the pleading of a party (usually defendant) against whom a fraud has been committed. The latter need not be even pleaded; may come to the attention of the court in any way; and the court will act sua sponte. * * * Even when the matter is brought to the attention of the court by a pleading, the court acts 'not out of any regard for the defendant who sets it up, but only on account of the public interest.' McMullen v. Hoffman, 174 U.S. 639, 669, 19 S.Ct. 839, 851, 43 L.Ed. 1117. * * *" D.C.W.D. Mo.1940, 38 F.Supp. 926, 934–935; see also: Frank Adam Elec. Co. v. Westinghouse Elec. & Mfg. Co., 8 Cir., 1945, 146 F.2d 165; Renaud Sales Co. v. Davis, 1 Cir., 1939, 104 F.2d 683, 685; E. W. Bliss Co. v. Cold Metal Process Co., 6 Cir., 1939, 102 F.2d 105, 110; Buromin Co. v. National Aluminate Corp., D.C.D. Del.1947, 70 F.Supp. 214; General Elec. Co. v. Hygrade Sylvania Corp., D.C.S.D. N.Y.1942, 45 F.Supp. 714, 718; cf. Heath v. Frankel, 9 Cir., 153 F.2d 369, 371, certiorari denied, 1946, 328 U.S. 844, 66 S.Ct. 1025, 90 L.Ed. 1618.

This doctrine alone then should prompt denial of equitable relief to both sides here. Moreover, the resort of both to self-help makes it clear that as far as any relief arising from unfair trade practice is concerned, the court should and will leave the parties as it finds them.

In the language of Wheeler v. Sage, 1863, 1 Wall. 518, 68 U.S. 518, 17 L.Ed. 646: "The court was imposed on * * *. A proceeding like this is against good conscience and good morals, and cannot receive the sanction of a court of equity. The principle is too plain to need a citation of authorities to confirm it. It is against the policy of the law to help either party in such controversies." 1 Wall. 530–531, 68 U.S. at pages 530–531.

■ For the reasons stated, both the fifth cause of action for unfair competition asserted by plaintiff and plaintiff-interveners, and the counterclaims asserted by defendants Wright and B & W, Inc. for unfair competition, will be dismissed for want of equity. Cf. Precision Instrument Co. v. Automotive Co., supra, 324 U.S. 806, 65 S.Ct. 993, 89 L. Ed. 1381; Morton Salt Co. v. G. S. Suppiger Co., supra, 314 U.S. at page 494, 62 S.Ct. 402; Worden & Co. v. California Fig Syrup Co., 1903, 187 U.S. 516, 540, 23 S.Ct. 161, 47 L.Ed. 282.

■ As to the patents in issue the matter is not solely a controversy between the parties. The trade and the public at large have an interest calling for some adjudication as to validity. Under the circumstances at bar it is the duty of the court to decide that issue notwithstanding the conduct of the parties seeking the decree. See: Sinclair & Carroll Co. v. Interchemical Corp., 1945, 325 U.S. 327, 330, 65 S.Ct. 1143, 89 L.Ed. 1644; Patent Scaffolding Co. v. Up-Right, Inc., 9 Cir., 194 F.2d 457, certiorari denied, 1952, 343 U.S. 958, 72 S.Ct. 1053, 96 L.Ed. 1357; Harries v. Air King Products Co., 2 Cir., 1950, 183 F.2d 158; Pennington Engineering Co. v. Spicer Mfg. Co., 6 Cir., 1947, 165 F.2d 59; Cover v. Schwartz, 2 Cir., 1942, 133 F.2d 541, 545, certiorari denied, 1943, 319 U.S. 748, 63 S.Ct. 1158, 87 L. Ed. 1703.

■ As the Court observed in Precision Instrument Co. v. Automotive Co., supra: "Clearly these are matters concerning far more than the interests of the adverse parties. The possession and assertion of patent rights are 'issues of great moment to the public.' * * * Mercoid Corp. v. Mid-Continent Investment Co., 320 U.S. 661, 665, 64 S. Ct. 268, 271, 88 L.Ed. 376; * * * United States v. Masonite Corp., 316 U.S. 265, 278, 62 S.Ct. 1070, 1077, 86 L.Ed. 1461. A patent by its very nature is affected with a public interest. As recognized by the Constitution, it is a special privilege designed to serve the public purpose of promoting the 'Progress of Science and useful Arts.' At

the same time, a patent is an exception to the general rule against monopolies and to the right to access to a free and open market. The far-reaching social and economic consequences of a patent, therefore, give the public a paramount interest in seeing that patent monopolies spring from backgrounds free from fraud or other inequitable conduct and that such monopolies are kept within their legitimate scope." 324 U.S. at pages 815–816, 65 S.Ct. at page 998.

After full consideration of the claims of each of the patents in suit in the light of the prior art as disclosed by the evidence, I find and hold the Hall Patent No. 2,671,515 ["Well Bore Cleaning Scratcher"] and the three Wright patents, namely, Patent No. 2,338,372 ["Method for Conditioning Well Bores"], and Patent No. 2,374,317 ["Well Production Equipment"—wall cleaning guide], and Patent No. 2,392,352 ["Method of Placing Cement Plugs in Well Bores"], and each claim of each thereof, to be invalid for want of "invention". See 35 U.S.C. §§ 100, 101; Jungerson v. Ostby & Barton Co., 1949, 335 U.S. 560, 69 S.Ct. 269, 93 L.Ed. 235; Mandel Bros. v. Wallace, 1948, 335 U.S. 291, 69 S.Ct. 73, 93 L.Ed. 12; Sinclair & Carroll Co. v. Interchemical Corp., supra, 325 U.S. 327, 65 S.Ct. 1143; Dow Chemical Co. v. Halliburton Oil Well Cementing Co., 1945, 324 U.S. 320, 65 S.Ct. 647, 89 L.Ed. 973; Cuno Engineering Corp. v. Automatic Devices Corp., 1941, 314 U.S. 84, 91, 94, 62 S.Ct. 37, 86 L.Ed. 58; Honolulu Oil Corp. v. Halliburton, 1939, 306 U.S. 550, 59 S.Ct. 662, 83 L.Ed. 980; Lincoln Engineering Co. v. Stewart-Warner Corp., 1938, 303 U.S. 545, 58 S.Ct. 662, 82 L.Ed. 1008; cf. Graver Tank & Mfg. Co. v. Linde Air Products Co., 1949, 336 U.S. 271, 69 S. Ct. 535, 93 L.Ed. 672; Goodyear Tire & Rubber Co. v. Ray-O-Vac Co., 1944, 321 U.S. 275, 64 S.Ct. 593, 88 L.Ed. 721; Harries v. Air King Products Co., supra, 183 F.2d at pages 162–163; and see Heath v. Frankel, supra, 153 F.2d 369; Dehydrators Ltd. v. Petrolite Corp., supra, 117 F.2d 183; Celite Corp. v. Dicalite Co., supra, 96 F.2d 242.

It is probably true, as counsel respectively contend, that other grounds of failure of the patents in suit to meet the statutory conditions of patentability may be established by the evidence, but due regard for the public interest does not require the court to consider them in view of the finding of want of invention. See: 35 U.S.C. §§ 103, 112; Muncie Gear Works v. Outboard Marine & Mfg. Co., 1942, 315 U.S. 759, 62 S.Ct. 865, 86 L.Ed. 1171; General Electric Co. v. Wabash Corp., 1938, 304 U.S. 364, 58 S.Ct. 899, 82 L.Ed. 1402; Beidler v. United States, 1920, 253 U.S. 447, 40 S.Ct. 564, 64 L.Ed. 1006.

The attorneys for defendants and counter-complainants may lodge with the Clerk pursuant to local rule 7 within fifteen days proposed findings of fact, conclusions of law and judgment (1) in favor of plaintiff and plaintiff-interveners on the counterclaims for patent infringement, and dismissing for want of equity the counterclaim for unfair competition; and (2) in favor of defendants on the seventh cause of action for patent infringement, and dismissing for want of equity the fifth cause of action for unfair competition.

In order to preserve the status quo until the judgment shall become final, the injunction relating to communications to the trade, issued January 26, 1952, pursuant to stipulation, must remain in effect, and the parties be further enjoined from commencing any new action, and from prosecuting or taking further proceedings in any pending action, involving a claim or cause of action presented for adjudication in the case at bar. Both injunctions will continue in force pendente lite and, upon determination of this action by final judgment, shall become ipso facto dissolved. [See Kerotest Mfg. Co. v. C–O Two Co., 1952, 342 U.S. 180, 183–186, 72 S.Ct. 219, 96 L.Ed. 200; Kessler v. Eldred, 1907, 206 U.S. 285, 289–290, 27 S.Ct. 611, 51 L.Ed. 1065; cf. United States v. United Mine

Workers, 330 U.S. 258, 289–294, 1947, 67 S.Ct. 677, 91 L.Ed. 884; Gompers v. Bucks Stove & Range Co., 1911, 221 U.S. 418, 31 S.Ct. 492, 55 L.Ed. 797; Ex Parte Simon, 1908, 208 U.S. 144, 148, 28 S.Ct. 238, 52 L.Ed. 429; United States v. Shipp, 1906, 203 U.S. 563, 573, 27 S.Ct. 165, 51 L.Ed. 319.]